Judge Geaham
delivered tire opinion of the Court.
On the 22d December, 1843, Mercer executed a mortgage to Flournoy on seventeen slaves, to secure the latter, as his surety, in a debt of $2000, due to Cruce, and a debt of $1500 to the Bank of Kentucky. Flournoy was also security for Mercer in a replevin bond to Parker, the principal and interest of which amounted to about $500. Flournoy paid of the Bank debt $750, and Mercer afterwards repaid him $75.
The pleadings and proof, in this cause, present the following state of facts, in addition to those above mentioned. The replevin bond to Parker was due. An arrangement was made by which Isaac Gray advanced $500 to Mercer, taking McNary as security in a note for its payment on a particular day, and taking also from Mercer an absolute bill of sale for a negro man named Peter, but the bill of sale to be void if Mercer should pay the money when it would become due. Flournoy agreed that if Mercer did not pay the money, as agreed upon, then, as he was to be benefited by the arrangement, he would release the lien, which, by virtue of his mortgage, he held on Peter, who was one of the slaves included in the mortgage. The money received from Gray was appropriated to the payment of the Parker debt. Mercer did not pay the money on the day it became due, but shortly afterwards obtained it from W. Gray, to whom a bill of sale of Peter was likewise made, and that to Isaac cancelled, he having, by the last arrangement received his money. Mercer being unable to pay William Gray the money borrowed from him, another arrangement was entered into, by which J. W. Kilgore, with Samuel Kilgore and Garrett *158 Gray as his sureties, gave a note to William Gray for the sum due to him, and thereby released the negro from his lien, and the bill of sale to William Gray was transferred to Kilgore, with the distinct understanding, as proved by Mercer, that it was only to operate as a security, and if Mercer paid the money, the bill of sale was tobedelivered back to Mercer. The possession of the negro never accompanied the bills of sale, but always remained with Mercer. Whether Flournoy continued his agreement with each of these lenders, to release his hold on Peter, is not distinctly shown in the proof. Mercer, through Watson, paid Wm. Gray $200 of this money. Preston Grace having obtained a judgment for $760 86 against Mercer, (which sum was due to him as he charges in his answer to Flournoy’s cross-bill, for money paid by him, as one of Mercer’s securities, in the aforesaid debt to the Bank,) he caused an execution on this judgment to be levied on the said negro man Peter. Kilgore claimed the property, but a jury summoned to try the right, found the negro subject to execution for Mercer’s debts. He was accordingly sold, and Grace, being the purchaser,. took possession of him, and has continued to hold him since the sale. Before the levy was made on the negro, by the Sheriff, Flournoy told Grace and the Sheriff that, so far as his mortgage was concerned, Grace might go on; that he, Grace, would only have to contend with Kilgore’s claim, and he would raise no objection to his levying and selling the slave, and would set up no claim to him. The negro was not sold subject to the mortgage but absolutely. Such being the state of facts, Grace filed his bill in chancery asking a decree to be quieted in his title, and for general relief, &c. Flournoy answered, insisting on his mortgage lien, and asking a decree to sell Peter, but making no prayer for a foreclosure of his mortgage, nor giving any account, whatever, of the other sixteen slaves. He made his answer a cross-bill against Mercer and Grace. The latter, in his answer thereto, asks that Flournoy be precluded from setting up his mortgage as to Peter. The bills, answers,. *159 depositions, &c., exhibit, in substance, the facts already detailed. The Circuit Court, on final hearing, dismissed the complainant’s bill, and decreed that Peter he sold to satisfy the amount due to Flournoy on his mortgage. The complainant has, by appeal, brought the case to this Court.
A mortgagee who consents to a sale ot mortgaged property, or who stands by and sees it levied upon without asserting his claim will be precluded from asserting title against a purchaser thereof.
But little need be said as to the bills of sale. Possession never having accompanied them, but continuing with Mercer, they were certainly fraudulent and void as to his creditors, and can constitute no obstacle to the relief sought for in the bill. If Flournoy is not, by his conduct and declarations, precluded from asserting a lien on Peter, his bill, or rather cross-hill, was not properly framed. Grace, by his purchase of Peter, acquired such an interest as to require Flournoy to foreclose his mortgage on the slaves conveyed therein, and if Peter must be sold to satisfy the sum due to Flournoy, then Grace, as to the sum paid for the negro, and as co-security in the debt to secure the payment of which the mortgage was executed, would probably have had a right to be substituted for Flournoy as to the property remaining unsold. At any rate, he ought to have shown what was done with the other slaves. But Flournoy was not entitled to any decree to sell Peter. The permission given by him, that the negro be levied on and sold, and his declarations before the levy, that he would not set up his mortgage, nor assert claim as to Peter, and the fact that he did not set up his mortgage, but permitted the property to be sold absolutely and not subject to it, completely estop him from now resisting the purchaser’s claims. He expressly advised and sanctioned the levy and sale, and thereby induced a purchase, which perhaps would not have been made, had he then insisted on his lien. His cross-bill ought, therefore, to have been dismissed. The claims set up by the defendants to the slave Peter, were such as to give to the complainant reasonable ground to apprehend that he might be subjected thereby to future inconvenience. So long as such claims hung over the property, they would injuriously affect the negro’s value when offered *160 for sale. It seems to us that the- complainant was entitled to relief.
Craddock and Cates for appellant; /, fy W. L. Har-> lan for appellee.
The decree of the Circuit Court is, therefore, reversed, with directions to render a decree, releasing the slave Peter from the claims of any of the defendants, and dismissing Flournoy’s cross-bill with costs.