## Pool v. Stephenson.

(Decided February 15, 1912.)

### Appeal from McCracken Circuit Court.

1. Estoppel—Laches—Sale of Mortgaged Property.—Where one claiming a lien upon certain property remains silent until another prosecutes an action to enforce a lien upon it to judgment and the payment of the judgment, is estopped from asserting claim. She should have spoken when she knew appellant was buying the property upon which she knew she had a lien amounting to more than the property was worth.

2. Same.—A mortgagee who consents to a sale of mortgaged property, or who stands by and sees it levied upon without asserting his claim, will be precluded from asserting his title against a purchaser thereof.

WM. MARBLE and F. N. BURNS for appellant.

D. G. PARK and REED & REED for appellee.

L. O. Stephenson, the husband of appellee, who was engaged in the undertaker's business in Mayfield, Ky., executed a mortgage in June, 1905, to his wife, the appellee, upon his stock of goods, to secure the payment of a debt of $3,000.00. The mortgage was properly recorded in Graves County. Stephenson continued his business in Mayfield from that time until the latter part of the year, at which time he moved his stock of goods and family to Paducah, Ky., and arranged to continue his business there. In a few days after he arrived in Paducah, he, appellant, and D. L. Adams began negotiations to form a partnership in the undertaker's business. To effectuate the trade, they invoiced the stock of Stephenson and found its value to be about $2,100. Appellant, Pool, also owned a stock of undertaking goods which was invoiced at $11,000.00. In order to form the partnership, Adams bought one-third of each of the stocks, Stephenson bought one-third of Pool's stock, and Pool bought one-third of Stephenson's stock, and in this way each became the owner of a third interest in the business. Pool paid for his interest with the stock of goods he had on hand and Stephenson put his in at $2,100.00, its invoice value, which left him owing appellant about $2,700.00. Stephenson paid $900.00 of this amount in cash and executed his three notes to appellant for $616.00 each and gave him a mortgage on his interest in the stock of goods belonging to the firm, to secure their payment. Appellee, the wife of L. O. Stephenson, signed these notes and, according to the notary's certificate, acknowledged the mortgage with her husband, but it does not appear that she signed the mortgage, that is, her signature is not attached to the copy of the record. After this, L. O. Stephenson mortgaged his interest in the stock of goods to his sister, Jennie P. Stephenson, to secure her in the sum of $2,000; and also gave H. L. Anderson, an attorney, a mortgage to secure the payment to him of $2,000.00. It is clearly shown by the testimony that when the partnership was formed, L. O. Stephenson represented to the other members that his stock of goods was free from any encumbrances, and, while the mortgage in favor of appellee was of record in Graves County and was, under the law, constructive notice, it does not appear that either Pool or Adams had actual notice of it. It appears that the

partnership continued until about the end of the year at which time, a considerable amount of money having been lost, the parties became dissatisfied and wanted to get out of the business. Finally, appellant set a price and agreed to give it for the whole or to sell his interest at the same rate, and Stephenson and Adams agreed to sell to him. In carrying out this trade, Pool returned Stephenson his three notes, released the mortgage and paid him $300 in cash. It appears in the record that there was some doubt as to the validity of the Anderson mortgage for $2,000, but it has been settled in some way and has no bearing upon the issues involved in this action. About two years after appellant became the owner of the stock of goods, Jennie P. Stephenson, a sister of L. O. Stephenson, instituted an action in the McCracken Circuit Court, upon her mortgage against appellant and her brother, L. O. Stephenson. Appellant had no notice of this mortgage, as it was not properly indexed, but it was duly lodged for record and recorded. Appellant defended the action, but, after ten or twelve months' litigation, she succeeded in recovering a judgment for her claim and appellant paid it. On July 25, 1910, appellee instituted her action on her mortgage, which was executed and recorded in Graves County, and recovered a judgment in the lower court, against appellant for $2,100.00. It is shown in the record that appellant had no actual knowledge of this mortgage until this suit was brought, but he did have constructive notice of it as it was properly recorded in Graves County, the place where the goods were and the parties resided at the time of its execution. Appellant pleaded estoppel and laches and these are the only questions necessary for a determination of this case. In the case of Ayer & Lord Tie Co. v. Baker, 138 Ky., 494, it is said:

"While as a general thing the courts are loathe to hold that a married woman may divest herself of her property in any way other than that prescribed by statute, yet we have repeatedly held that a married woman may by her acts and declarations estop herself from asserting dower or other claims, when to permit her to do so would operate as a fraud."

Appellee did not testify in this action, but introduced her husband, who was also a witness for Jennie P. Stephenson in her suit, and the testimony he gave in the suits is in some respects contradictory. It satisfactorily ap-

pears from the pleadings and testimony in the case that appellee knew of the formation of the partnership in Paducah; that she actually participated in it by signing the three notes and acknowledging the mortgage, and that she also knew of the sale by her husband to appellant. She also knew that her husband continued to sell, in the usual course of trade, parts of this stock of goods from the time he executed the mortgage to her in Mayfield up to the time he sold his interest to appellant in Paducah. She further knew of the bringing of the suit by her sister-in-law for the enforcement of her mortgage which was executed in Paducah. It does not appear, however, that she was present at any time when her husband represented that his stock of goods was free from encumbrance. She knew that appellant and Adams were paying full value for her husband's stock of goods, and ought to have, and likely it did, appear strange to her that these men would pay full value for a two-thirds interest in his stock if they had actual knowledge of her lien upon it. Although she participated in the sale by the execution of the three notes and the acknowledgment of the mortgage, she gave neither appellant nor Adams an intimation of her mortgage lien, nor did she mention it when appellant was buying Adams and her husband out. But, stranger than all, if possible, appellee knew of the enforcement of the lien by her sister-in-law, upon the goods owned by Stephenson including that which he bought from appellant in part payment for which he gave appellant three notes signed by himself and appellee, and which is the same goods appellee is now trying to enforce a lien against; and, further, appellee's lien was prior to that of her sister-in-law, and, according to this record, Stephenson's interest at that time was worth but little more, if any, than the claim of her sister-in-law, Jennie P. Stephenson. It was strange appellee would suffer a party with an inferior mortgage to enforce it without making her rights known to any one. She was a proper party to her sister-in-law's action and if she had made her rights known her claim would have consumed the whole interest of her husband, thereby enabling appellant to defeat Jennie P. Stephenson in her effort to collect her claim. But she remained silent until her sister-in-law had prosecuted her action to judgment and appellant had paid it, and continued to be silent until July, 1910. Appellee should have spoken when she

knew that appellant and Adams were buying the property from her husband upon which she knew she had a lien amounting to more than the property was worth. She also ought to have spoken when her sister-in-law was prosecuting her claim for the enforcement of a lien, but she remained silent and suffered appellant and Adams to pay a full price for a two-thirds interest in her husband's stock of goods upon which she is now trying to enforce a lien. She also suffered her sister-in-law to prosecute her action to judgment and collect same, and then remained silent for three years or more before she made it known to appellant that she had a mortgage on the property. It is shown that appellant would not have purchased the goods or made the trade, if he had known the facts, and, in all probability, would not have been compelled to pay her sister-in-law her judgment if appellee had made her claim known at the proper time. The delay of appellee in bringing her action is some evidence to our minds that she had some doubt as to her right to a judgment upon her claim. For the reasons above stated and on account of the further fact that she knew that the goods upon which she had a lien were intermingled with a larger stock of the same kind of goods and from which sales had been made in the usual course of trade for several years, which made it impossible for her to know what portion of them remained, we are of the opinion that appellee is estopped from asserting her claim.

The facts in the case of Chirchill v. Hohn, 20 Ky., L. R., 200, were, in short, as follows: A wife, with the knowledge of her husband, included property belonging to him in a mortgage given by her to secure her debt. The husband made no objection except to his wife, but allowed her to obtain goods on the faith of the mortgage, assisting her in selling them, and did not inform the mortgagee that he claimed the property until two years after the execution of the mortgage. The court in that case said:

"He was silent when it was his duty to speak. This was equivalent to concealment (7 A. & E. Ency. of Law, 12; Bispham's Equity, Section 284). He permitted his wife to obtain the stock of goods upon the faith of this mortgage; and assisted her in the conduct of her business in selling the goods so procured, thereby preventing appellees from taking such steps as they might have

taken to secure their debt. Equity and good conscience required that he should make disclosure of his claim under the circumstances of this case. Having knowingly permitted her to obtain the goods on the strength of her supposed ownership of this property, he can not now be heard to assert a claim to its ownership. (Wilson v. Scott, 11 Ky. L. R., 70, and 13 Ky. L. R., 926). 'When they should have spoken they are silent, and when they should be silent they speak. But the equitable and well established rule in such cases is, if a man is silent when he ought to speak equity will debar him from speaking when conscience requires him to be silent.' "

Appellee's conduct was such as to lead appellant to believe that when he bought an interest in her husband's goods and when he bought the whole of them, that she had no claim upon them. If she had spoken upon either of these occasions, appellant would not have made the trades. Appellant was very much damaged by appellee's silence if she is now permitted to collect her judgment, and the same is true with reference to the enforcement of her sister-in-law's mortgage. In the case of Grace v. Mercer, etc., 49 Ky., 157, it is, in substance decided that a mortgagee who consents to a sale of mortgaged property, or who stands by and sees it levied upon without asserting his claim will be precluded from asserting his title against a purchaser thereof. Appellee stood by in silence and suffered appellant to pay a full value for a third of her husband's stock of goods and also allowed him to purchase the whole of the stock and pay a fair value therefor without making her right known, and she also stood by and suffered her sister-in-law to foreclose her subsequent mortgage lien upon the property. The effect of this was to allow appellant to pay a full value for the property the first time and to pay her sister-in-law its value the second time, and she is now seeking to foreclose a mortgage lien for $2,100.00 against the same property. She has by her silence caused appellant great loss, and in equity and good conscience he should not be made to pay appellee a third time for the property.

For these reasons the judgment is reversed and the case remanded with directions to dismiss appellee's action.