# Buttermore v. Pope-Cawood Lumber & Supply Company et al.

(Decided June 11, 1937.)

C. B. SPICER for appellant.

GEORGE R. POPE for appellees.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

On December 17, 1931, the appellee Pope-Cawood Lumber & Supply Company filed suit against Fred Bargo, George Shepherd, and Amanda Shepherd, for the sum of $443.25, evidenced by notes executed by George Shepherd to Bargo and indorsed and transferred by Bargo to appellee. To the petition in that suit Bargo filed a pleading denominated an answer, counterclaim, and cross-petition, in which he alleged that a certain piece of property (the same property involved in this suit) had been transferred by Dr. H. K. Buttermore, the present appellant, to Amanda Shep-

herd, wife of George Shepherd, for the purpose of defrauding the creditors of George Shepherd. No defense was made to the cross-petition, and a judgment was entered in conformity with its allegations, directing the sale of the property involved for the purpose of satisfying the amount claimed in the original petition. Thereafter a sale was held pursuant to the judgment, and the property was purchased by the appellee.

The deed from the appellant, Dr. Buttermore, to Amanda Shepherd was never recorded, and Dr. Buttermore was not made a party defendant to the cross-petition of Fred Bargo. However, after the sale was made, Dr. Buttermore filed exceptions thereto. It is possible that he also filed an intervening petition in that proceeding, although there is a sharp controversy on this question, and the records of the Harlan circuit court do not show any order filing such a petition. The proof indicates that Dr. Buttermore's attorney prepared an intervening petition to be filed in that suit and sent a carbon copy of it to counsel for the Pope-Cawood Lumber & Supply Company, who in turn filed an answer thereto on the assumption that the intervening petition had been filed. Thereafter the orders in the original suit recite that counsel for Dr. Buttermore withdrew the intervening petition and also the exceptions filed to the commissioner's report of sale, and the sale were thereupon confirmed. The present suit was shortly thereafter filed by Dr. Buttermore against Amanda Shepherd, George Shepherd, and the Pope-Cawood Lumber & Supply Company. The petition recites that Dr. Buttermore reserved a vendor's lien in the sum of $750 in the unrecorded deed to Amanda Shepherd; that this lien has not been satisfied; and that the Pope-Cawood Lumber & Supply Company is claiming an interest in the property. Plaintiff asked that the property be sold for the purpose of satisfying his lien thereon. No defense was filed to the petition by Amanda Shepherd or George Shepherd, but the appellee Pope-Cawood Lumber & Supply Company filed an answer and amended answer in three paragraphs. In the first paragraph of its answer appellee set out the facts surrounding its purchase of the property in the previous suit and relied on the judgment therein as res adjudicata of the issues presented in the present litigation. By the second paragraph of its answer appellee

relied upon the withdrawal by Dr. Buttermore of his alleged intervening petition, together with his exceptions to the sale, as a waiver of his purported lien against the property. In the third paragraph of the answer appellee set out that the entire scheme by which the vendor's lien was reserved and the deed not put to record was designed to perpetrate a fraud on the creditors of George Shepherd as the result of collusion between Dr. Buttermore and the Shepherds, and that the said lien was fraudulent and without consideration to support it. The chancellor gave judgment in favor of Dr. Buttermore against George and Amanda Shepherd, but refused to give judgment against the appellee Pope-Cawood Lumber & Supply Company, or to sustain the lien of Dr. Buttermore on the property involved. He therefore dismissed the petition as against the appellee. This appeal followed.

The evidence conduces very strongly to indicate that there was actually some collusion between Dr. Buttermore and the Shepherds. Of course, the mere fact that George Shepherd had requested Dr. Buttermore to make the deed to Amanda Shepherd rather than to himself would not show any participation by Dr. Buttermore in the fraud. On the other hand, it is shown that the value of the property transferred by Dr. Buttermore to the Shepherds is much less than the purported consideration therefor and is probably less than the amount of the lien alleged to have been reserved. It is further shown that various other dealings had been had between Dr. Buttermore and the Shepherds, and it is very strongly indicated that the deed to the property here involved was originally made to George Shepherd and later destroyed, and a second deed made to Amanda Shepherd. Fred Bargo testified that on the morning of the sale of the property under the judgment in the first case, he went to Dr. Buttermore and asked him if George or Amanda Shepherd owed him anything and that the doctor responded: "No, I guess George would owe me for some coal, or something like that. Not much, if anything." Dr. Buttermore admits having had a conversation with Bargo, but says that he was not asked in regard to Amanda Shepherd owing him anything but simply whether George Shepherd was in debt to him. He says that he told Bargo that George did not owe him much, if anything, but that he made

no mention of Amanda Shepherd and consequently was not advised of the vendor's lien. Amanda Shepherd testified in regard to numerous transactions between her husband and Dr. Buttermore, but admitted that she owned no property herself, and failed to indicate how, if at all, she expected to pay the alleged deferred payments on the property.

Under ordinary circumstances, of course, there is no obligation on a lien-holder to watch out for suits against the property and go into them voluntarily when he is not made a party. There could be no duty on the appellant here to present his claim in the original suit, unless, under the peculiar facts here presented, it can be said that the actions of the appellant have estopped him from now asserting his claim against the land.

It will be observed that whether Dr. Buttermore actually filed an intervening petition in the previous litigation or not, it is not disputed that he filed exceptions to the commissioner's report of sale. He must, therefore, have known of the suit and of the sale. He knew that the deed to the property was not recorded, and he must have known that if his exceptions were withdrawn the chancellor would confirm the report of sale and the purchaser would be required to take the property. Whether he was an actual party to the fraud of George Shepherd or not, he must have known that his conduct was calculated to mislead the purchaser into taking a piece of property subject to a lien greater than its actual value. There was nothing to prevent the confirmation of the sale or the casting of title on appellee unless appellant asserted his purported lien and insisted upon his exceptions. Having full knowledge of the facts, he could not thus step aside and passively perpetrate a fraud on appellee. It was his duty to speak. Barnett v. Bank of Commerce, 264 Ky. 179, 185, 94 S. W. (2d) 334; Pool v. Stephenson, 146 Ky. 784, 143 S. W. 419. There is positive testimony to the effect that he actually stated that Amanda Shepherd owed him nothing, and even though the appellant denies making this statement, the question of the credibility of the witnesses was for the chancellor. Certainly, in view of the suspicious circumstances attending the entire transaction between appellant and the Shepherds, together with their previous dealings, and the nature of the original suit with its allegations of

fraud, of which appellant was advised, we cannot say that the conclusion of the chancellor in this case is so at variance with the issues and proof here presented as to necessitate a reversal of his judgment.

Judgment affirmed.

Whole court sitting.