GOTTHELF et al. v. SHAPIRO et al.

(Supreme Court, Appellate Division, Second Department. December 30, 1909.)

1. NAMES (§ 10*)—ASSUMED NAME—EFFECT.
    That a vendee of certain real estate, throughout the transaction and in the execution of a purchase-money mortgage, assumed the name of his infant brother, such fact did not preclude the mortgagee from foreclosing the mortgage against the vendee and mortgagor in the name so assumed, under the rule that, if a party assumes a name other than his own in a transaction, he cannot later escape his obligation by a disavowal; it being the identity of the individual that is regarded, and not the name he bears or assumes.
    [Ed. Note.—For other cases, see Names, Cent. Dig. § 7; Dec. Dig. § 10.*]

2. NAMES (§ 10*)—ASSUMED NAME—LIVING PERSON.
    That a name other than his own, assumed by a mortgagor in executing a mortgage, was the name of a living person, did not make the mortgage the instrument of the person whose name was assumed.
    [Ed. Note.—For other cases, see Names, Dec. Dig. § 10.*]

3. MORTGAGES (§ 56*)—SIGNATURE.
    Where the name "Max J. Shapiro" was signed physically to a mortgage by another, instead of by Hyman Shapiro, the mortgagor, and he assumed the signature as that of the name assumed by him in the transaction, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

then delivered the mortgage so signed and executed to the mortgagee as his own instrument executed in his name, he was liable as though he himself had subscribed the same; and this though by accident or design he assumed in the transaction a name which was identical with that of the person who physically subscribed the name under such circumstances.

[Ed. Note.—For other cases, see Mortgages, Dec. Dig. § 56.*]

4. REFORMATION OF INSTRUMENTS (§ 20*)—EQUITY—JURISDICTION.

Reformation of instruments may be allowed, where the agreement has been determined by both parties, but in reducing it to writing, either through mutual mistake, or through the mistake of the plaintiff accompanied by fraudulent knowledge and procurement of the defendant, the instrument fails to express the real agreement or transaction.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 79–80; Dec. Dig. § 20.*]

5. REFORMATION OF INSTRUMENTS (§ 6*)—JURISDICTION—EXECUTED CONTRACTS.

Reformation of instruments may be exercised with respect to written instruments operating inter vivos, whether they are executed contracts, as deeds, mortgages, or leases, or executory agreements, as bonds, insurance policies, notes, bills of exchange, etc.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 5–19; Dec. Dig. § 6.*]

6. MORTGAGES (§ 476*)—FORECLOSURE—REFORMATION.

Where a mortgagor assumed the name of his infant brother in the transaction without the knowledge of the mortgagee, and in a suit to foreclose the brother appeared by guardian ad litem and pleaded infancy, and brought an affirmative action to avoid the transaction on that ground, the mortgagee was entitled to have the mortgage reformed by substituting the name of the real mortgagor for the name signed to the mortgage, under the rule that, when equity once acquires jurisdiction, it will be retained for full relief.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1391; Dec. Dig. § 476.*]

7. ACTION (§ 38*)—JOINDER—SCOPE OF RELIEF.

Where the facts alleged show one primary right of plaintiff, and one wrong done by defendant, which involves that right, plaintiff's complaint states but a single cause of action, no matter how many forms or kinds of relief he may seek to recover.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 549; Dec. Dig. § 38.*]

8. ACTION (§ 38*)—CAUSES OF ACTION—DUPLICITY.

A mortgagor caused the mortgage to be executed by and in the name of his infant brother, which name the mortgagor used in the transaction, and on foreclosure proceedings being brought the brother appeared by guardian and pleaded infancy, and instituted an affirmative action to avoid the transaction on that ground, offering to rescind. During the pendency of these actions, mortgagees sued to have the mortgagor's actual name substituted for that signed to the bond and mortgage, and that the apparent liability of the infant mortgagor be shifted to the latter, and that the title vested in the infant be declared to be held in trust for the mortgagor, and that the various instruments be reformed, and, if necessary, that the infant convey to the mortgagor subject to the mortgage, which should be foreclosed, and that the infant be barred from prosecuting the suit to rescind. *Held*, that the complaint was not demurrable for misjoinder of causes of action.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 549; Dec. Dig. § 38.*]

Appeal from Special Term, Kings County.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Suit by Herman Gotthelf and another against Max J. Shapiro and another. From an interlocutory judgment overruling defendants' demurrer to the complaint for want of facts, and because of other actions pending between the same parties for the same cause of action, and that the causes of action were improperly united, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, JENKS, and MILLER, JJ.

Edward W. S. Johnston, for appellants.
Samuel I. Frankenstein, for respondents.

JENKS, J. This appeal is from an interlocutory judgment overruling a demurrer to the complaint. The defendants are two brothers, named Hyman and Max J. Shapiro. The grievance of the plaintiffs is that in their sale of their lands to Hyman the defendants contrived and worked a fraud upon them. They aver that they were ignorant throughout the transaction of the given name of Hyman and of the existence of Max, and that the defendants took advantage of this ignorance, so that, although their dealings were with Hyman exclusively, the contract for purchase was executed in the name of Max, the deed was executed to Max as grantee, and the purchase-money bond and mortgage was executed in the name of Max. Hyman paid $7,000 in cash to the plaintiffs on account of the purchase, and the said bond and mortgage was for $18,000. The realty was subject to prior liens of $7,000. The transaction was in 1906, when the lands were worth $32,000. The financial depression of 1907 reduced the value to $22,000, and such is their present value, and their prospective value for some time to come. There was default in the payment of the semiannual interest on the said mortgage due in February, 1908. The plaintiff began foreclosure proceedings in this court, and made Max J. Shapiro a party. This defendant Max J. Shapiro, who was served with process, appeared by guardian ad litem and pleaded his infancy; and the same Max J. Shapiro also brought an affirmative action to avoid the transaction on the ground of his infancy, offering to reconvey the premises, and asking judgment for $5,000, which he asserted was paid from his money on account of the purchase, and also further sums of money, outlay on account of the premises in question. Both actions are pending. In this action the plaintiffs pray that Hyman be substituted for Max J. in the purchase-money bond and mortgage, that the apparent liability of Max J. be shifted to Hyman, that the title vested in Max J. be declared in trust and for the benefit of Hyman, that the various instruments be reformed, that Max J., if necessary, be directed to convey to Hyman subject to the said mortgage, that the mortgage be foreclosed, and that the defendant Max J. Shapiro be barred from the prosecution of his said action, or any like action, and for such other relief as is proper. The defendants demur that the complaint does not state facts sufficient to constitute a cause of action, that there are other actions pending for the same causes of action, and that causes of action have been improperly united.

The plaintiffs contracted to sell for a certain sum in cash and for a

purchase-money bond and mortgage. They received the cash from Hyman Shapiro. Cash has no earmarks. If they can satisfy their mortgage by foreclosure, then they are not harmed by the fraud. I perceive no reason why the plaintiff cannot now foreclose the mortgage as against the Max J. Shapiro who was a mortgagor, even though he generally bears the name of Hyman Shapiro. Throughout the transaction Hyman adopted Max J. as his own given name. Hyman in this transaction could assume the name of Max J.; and, if he did, he cannot escape his obligation by a later disavowal. See Matter of Snook, 2 Hilt. 566; David v. Williamsburgh City Fire Ins. Co., 83 N. Y., at 269, 38 Am. Rep. 418; England v. New York Publishing Co., 8 Daly, 375; Preiss v. Le Poidevin, 19 Abb. N. C. 123; Kennedy v. People, 39 N. Y., at 251. It is the identity of the individual that is regarded, not the name that he may bear or choose to assume. Matter of Snook, supra, at page 575. If Hyman Shapiro executed the mortgage, assuming the name of Max J. Shapiro, he would none the less be bound. David v. Williamsburgh City Fire Ins. Co., supra; 1 Addison on Contracts, 73 (bottom paging), and authorities cited. The fact that there was a living person whose name was Max J. Shapiro did not make that mortgage the instrument of that person. If the name Max J. Shapiro was signed physically by another, instead of by Hyman Shapiro himself, and Hyman assumed that signature as that of the name assumed by him in this transaction, and then delivered the mortgage so signed and thus executed to the mortgagee as his instrument executed in his name, it is the same as if he himself had subscribed that name. Manhattan Life Ins. Co. v. Alexander, 89 Hun, 449, 35 N. Y. Supp. 325, affirmed 158 N. Y. 732, 53 N. E. 1127. And it does not change the principle that Hyman Shapiro, by accident or by design, assumed in this transaction a name which was identical with that of the person who physically subscribed the name under such circumstances.

And yet I think that the plaintiffs may be heard in a court of equity on their plea of reformation in view of the character and form of the obligation. The remedy may operate indirectly to establish or to protect primary rights. Pomeroy's Eq. Jur. §§ 171, 1376. The same learned author, in his Equitable Remedies (section 676), says:

"Where, however, the instrument does not express the true intent of the parties, owing to mistake on one side, coupled with fraud or inequitable conduct on the other, relief will be freely given. The ground of the jurisdiction in this case is the fraud of the defendant, rather than the mere mistake of the plaintiff."

See, too, Welles v. Yates, 44 N. Y. 525; Kilmer v. Smith, 77 N. Y. 226, 33 Am. Rep. 613.

Mr. Pomeroy, in his Equity Jurisprudence, also says, citing authorities (page 1540):

"Reformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction to writing, either through the mistake common to both parties, or through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction. In such a case the instrument may be corrected, so that it shall

truly represent the agreement or transaction actually made or determined upon according to the real purpose and intention of the parties."

And further (page 1543):

"The jurisdiction to grant the relief of reformation may be exercised with respect to written instruments operating inter vivos, whether they are executed contracts, such as deeds of conveyance, mortgages, leases, or executory agreements, such as bonds, policies of insurance, notes, bills of exchange, and the like."

And, as to the principle, see, too, Parlin v. Stone (C. C.) 48 Fed. 808; Collins v. Cornwell, 131 Ind. 20, 30 N. E. 796.

It does not appear that any innocent person could be affected in this case. I may add that it is a familiar rule that, when a court of equity once acquires jurisdiction, it will be retained for full relief. Mr. Pomeroy, in his Equitable Remedies, goes so far as to say (section 683):

"The principle that when equity once acquires jurisdiction it will be retained for full relief is applicable, and consequently additional equitable relief, such as specific performance, foreclosure, or legal relief in damages, may be awarded in the same suit."

I think that there is not an improper joinder of causes of action. Pomeroy on Code Remedies lays down this rule for a test:

"If the facts alleged show one primary right of the plaintiff, and one wrong done by the defendant which involves that right, the plaintiff has stated but a single cause of action, no matter how many forms and kinds of relief he may claim that he is entitled to and may ask to recover"—quoted in Nichols' New York Practice, p. 58.

Bliss, in his Code Pleading (section 112), cites the opinion of Haight, J., in Mahler v. Schmidt, 43 Hun, 512, as affording the test:

"This provision of the Code is but declaratory of the rule that previously existed, and the test is whether or not the parties joined in the suit have one connected interest centering in the point in issue in the cause, or one common point of litigation."

The one primary right of the plaintiffs in this case is to have Hyman Shapiro held to his obligation, and the one primary wrong is the fraud practiced in order to avoid them. Asking for multiplicity of relief does not afford ground for demurrer against the complaint for stating more than one cause of action, for the cause alleged and the relief asked are separate matters. Hammond v. Cockle, 2 Hun, 495; Bliss v. Winters, 38 App. Div. 174, 56 N. Y. Supp. 650.

The interlocutory judgment must be affirmed, with costs. All concur.