New York Life Insurance Company, Respondent, v. Elvira Manning, as Administratrix, etc., of Charles Nicchia, Deceased, Appellant, Impleaded with William M. Moore and Others, Defendants.

First Department, May 29, 1913.

Life insurance — suit to cancel policy — evidence — admissions by agent — payment of premium by agent.

Suit to have a policy of life insurance declared null and void upon the ground that it had no valid inception. Evidence examined, and *held*, that there was no delivery of the policy to the insured or payment of premium on his behalf, and that a judgment for the plaintiff should be affirmed;

That admissions of an agent of the plaintiff were binding upon the defendant, an assignee of the policy, only in so far as he claimed title through such agent.

Payment of a premium by an insurance agent cannot inure to his benefit or to the benefit of the insured who did not direct or ratify such payment.

Appeal by the defendant Elvira Manning, as administratrix, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of September, 1910, upon the decision of the court rendered after a trial at the New York Special Term.

*G. P. Foulk [Joseph Nicchia* with him on the brief], for the appellant.

*James H. McIntosh,* for the respondent.

Judgment affirmed, with costs, on opinion of Lehman, J.

Present — Ingraham, P. J., Clarke, Scott, Dowling and Hotchkiss, JJ.

The following is the opinion of Lehman, J.:

Lehman, J.:

The plaintiff herein seeks to have a policy of insurance, which pretends to insure the life of Charles Nicchia, declared null and void. The various defendants, except the Crown Bank of Canada, which has not appeared herein, all claim to be the owners of the policy and counterclaim for the face

value of the policy which each claims became due to him or her upon the death of Charles Nicchia. The policy is expressly declared to be "incontestable," and the plaintiff concededly cannot avoid its obligation on the ground of fraud or misrepresentation. It can obtain the relief demanded herein only if it can show that the policy had no inception. Part of the evidence consists of alleged admissions by one William McGowan Moore, a former agent of the plaintiff, who obtained from Nicchia the application for insurance, paid to the company the first premium, less his commission of sixty per cent upon such premium, and thereafter received from Nicchia a paper which purported to be an absolute assignment of the policy of insurance. These alleged admissions by Moore were testified to by John Kirkland Clark, an attorney of plaintiff, and he is corroborated by other employees of the plaintiff. As I stated at the trial, I have no doubt that Moore made these admissions, and I have practically no doubt that they are true. Mr. Clark impressed me on the stand as a man who would not allow any false notions of duty to his client to conflict with his duty as an officer of the court. On the other hand, Moore's testimony on the witness stand denying these admissions failed to impress me at all. I believe it was false on every material point on which it would be to his interest to testify falsely. The first serious difficulty in the case is presented by the question of the effect of these admissions by Moore on the other defendants. Clearly no statements made by Moore can bind the representatives of the deceased Charles Nicchia, who did not claim through Moore. As to the subsequent assignees the question is more serious, and at the trial I reserved decision upon the question whether any statements made by Moore could bind them. It appears that at the time these admissions were made by Moore the policy had been assigned by him to the Crown Bank of Canada, and thereafter the defendant McGowan received an assignment from both the Crown Bank of Canada and from Moore. In so far as McGowan is the assignee from Moore, these admissions are evidence against him because they were made prior to such assignment. However, McGowan asserts that his title comes from the Crown Bank and that the assignment by Moore was a mere superfluity. I believe and find that McGowan took the

assignment from the Crown Bank as agent for Moore, but that he paid value to the bank for this assignment. Conceding that he obtained from the bank all its title for his own benefit and that no statement made by Moore can affect such title, yet these statements must affect any title he thereafter received from Moore. I have, therefore, adhered to the ruling that I made at the trial and have regarded the admissions of Moore as binding upon the defendant McGowan only in so far as he claimed title through Moore. The assignment to the Crown Bank was made prior to these admissions, and in so far as the Crown Bank had title to this policy it transferred its title to McGowan, and no admissions made by Moore could affect McGowan as assignee of the Crown Bank. It appears undisputed that Charles Nicchia applied on August 26, 1905, to the plaintiff through Moore, its agent, for a policy of life insurance for $5,000 payable to his estate. The application contained a clause "that the insurance hereby applied for shall not take effect unless the premium is paid and the policy delivered to me during my lifetime, and that unless otherwise agreed in writing the policy shall then relate back to and take effect as of the date of this application." The claim of the plaintiff is that there was no valid contract of insurance in force until the policy was delivered to Nicchia and the premium was paid, and that the delivery contemplated by this clause was not a mere manual delivery, but a delivery accompanied by acceptance with the intent to constitute a binding contract, and the payment of the premium was to be a payment made either by the plaintiff or by some other person in his behalf. Nicchia is now dead, but before his death he made a deposition as to the circumstances surrounding the transaction. This deposition was introduced in evidence, and upon this deposition the entire case of the plaintiff rests. It appears that the plaintiff, in response to Nicchia's application, wrote out a policy on September 8, 1905, bearing number 3,741,507, and sent it to their Toronto branch This policy was received by Moore and taken to Nicchia's office and left there for several weeks. No premium was paid at that time and Moore made no demand nor did Nicchia promise to pay the premium. Several weeks thereafter Moore came for a check and told Nicchia that he had paid the premium. At

that time Nicchia told Moore that was not necessary; he could have given his own check, and that he no longer desired to take a $5,000 policy, but would be willing to take one for $2,500. At that time he did not desire the $5,000 policy because he was going to take the policy with another company which he thought offered greater inducements. Moore then took the $5,000 policy and returned it to the plaintiff, who sent two $2,500 policies on January 31, 1906, in its place. Moore took one of the policies to Nicchia, who examined it, but declined to accept it, as he thought it called for the same premium as the original $5,000 policy, and if he was going to pay the full premium he desired the full insurance. Thereafter Nicchia became very ill, and during his illness and while he was at the hospital Moore called on him and asked him to sign a paper in order to protect him for the premium he had paid. Nicchia then signed a paper for this purpose. This paper is in form an absolute assignment of the policy to Moore. Thereafter Moore returned to the plaintiff the two policies for $2,500 and received in return a policy for $5,000 to be delivered to Nicchia. This policy he retained until he assigned it to the Crown Bank of Canada. Nicchia never saw this policy, and the two next annual premiums were paid by Moore or by his assignee. In November and December, 1908, Moore tried to obtain money from Nicchia, who was then dying from tuberculosis, for the return of the policy, and only then did Nicchia offer to pay any premiums or assert any claims to the insurance. Moore also tried to obtain money from the plaintiff for the surrender of the policy and admitted to plaintiff's attorney that the premium was never paid by Nicchia and that Nicchia had never promised to pay the premium or to accept the policy. This admission is of course not binding on Nicchia, but is referred to here because it represented the first information to the plaintiff of the circumstances, and plaintiff immediately thereafter began this suit. In considering the testimony I have given full faith to everything testified to by the witnesses in behalf of Nicchia's personal representatives. Their attitude appeared to me frank and fair, but though perhaps they showed that Moore was attempting to obtain an unfair advantage of the intestate, the testimony is hardly material upon the main issue whether or

not this policy of insurance had a valid inception.    I am unable from the testimony to reach any conclusion other than that there was no delivery to Nicchia and no payment of the premium in his behalf.   A delivery of a contract in law involves an acceptance with intent to assume both its benefits and burdens.    At no time did Nicchia receive the policy with such intent.    He never paid the premium and never agreed to pay it.    He apparently, even in January, did not believe that he had bound himself to take a $5,000 policy, and though he says that he did not pay the premium in May only because he was unable to sign checks, it appears that he was able to sign the assignment with a firm hand, and I do not see why a signature on an assignment involves less effort than on a check.   Nor could the payment of the premium by Moore make the insurance binding on the plaintiff.   Moore made the payment of his own accord, without request from Nicchia or promise of repayment by him.   He was the plaintiff's agent at the time and made a payment of only forty per cent, retaining the sixty per cent commission to which he was entitled on the first annual premium.    A payment by an agent under such circumstances is certainly not the payment of the premium contemplated by the contract.    The company does not insure for the first year for a forty per cent premium; it insures for a full premium and pays its agent sixty per cent commission, expecting to be repaid for this commission by the probable subsequent annual payments.    It receives full consideration for its commission only when the agent obtains for it an actual *bona fide* client who accepts the insurance, and who may be expected to pay future premiums.    Moore was not acting in accordance with his instructions nor in accordance with the duty he owed to the plaintiff, and the payment of a premium by him cannot inure to his benefit nor to the benefit of the insured, who did not direct or ratify such payment.    It appears to me that this payment by Moore was made in the hope and expectation that he could thereafter persuade Nicchia to accept the policy and ratify his prior payment, thus entitling him to receive his commission. He knew that such payment was to be made within sixty days from the date of the application, and if not made within that time or the time extended he was, under the by-laws of the

insurance company, precluded from delivering the policy. Inasmuch as he paid only forty per cent he could not lose much, if anything, if the policy were thereafter canceled. Even if Nicchia accepted a policy for half the amount he would profit. Before the policy was accepted Nicchia became desperately ill. Moore's duty to the company then required him to return the policy. Instead of so doing, he endeavored to take advantage of the circumstances by obtaining the policy for his own benefit. Nicchia was apparently in a condition to understand what he was doing, but not to make any careful examination of papers submitted to him. He was told that he must sign a paper to protect Moore. Apparently believing that he had no interest in the policy, he signed a paper which was, in fact, an assignment. He could and did understand that thereby he was relinquishing rights to insurance that he never claimed, but he did not examine or understand the actual contents of the paper. When he was attacked by tuberculosis, which followed and was a result of the critical illness, and found out that there was a policy of insurance on his life apparently outstanding, he naturally desired the benefit of it, and then tendered payment of the premiums due on the policy. His attitude before his illness and his attitude thereafter in allowing two annual premium dates to pass unheeded is not consistent with the claim of his representatives that he had prior to that date accepted the burdens and the benefits of the policy, and his estate cannot be enriched by the fraud of the agent. Neither Moore nor his assignees are entitled to anything except a return of the premiums paid, and even as to these I do not decide that they have a valid claim to the first premium, but only that they are entitled thereto because the plaintiff has tendered the same in a court. Since Nicchia has been guilty of no fraud or misrepresentation, and his representatives have frankly laid the matter before this court, I do not think they should be obliged to pay costs. Costs may be taxed by the plaintiff against the other defendants who have appeared. I cannot direct the plaintiff to deduct its costs from the premiums because by its tender it has already relinquished it rights to this amount. It must tax the costs and secure payments in any way open to it, without specific direction contained in the judgment. I am satisfied with the findings of

fact submitted by the plaintiff, except that I shall modify findings 15, 22, 32, 58 and 59 and shall refuse to find Nos. 47 and 69 and conclusion of law numbered 18. The modified findings may be obtained at my chambers. Submit judgment.