ANNA DURNIN, Appellant, *v.* ÆTNA LIFE INSURANCE COMPANY, Respondent.

Fourth Department, March 5, 1930.

*Hull Greenfield* [*Albert H. Clark* of counsel], for the appellant.

*Mackenzie, Smith, Lewis & Michell* [*Charles E. Spencer* and *Caleb Candee Brown, Jr.*, of counsel], for the respondent.

CROUCH, J. Plaintiff as beneficiary sues on an accident insurance policy. Defendant says, among other things, that prior to the accidental death of the insured the policy had been canceled in accordance with its terms. On that issue a verdict for defendant was directed at the close of the whole case. The following is a fairly complete summary of the facts in evidence:

Wadsworth & Olmstead, Managers — that being the name and style of the firm as used in the evidence — were the general agents of the defendant. Their office was in Syracuse. They were furnished by defendant with forms of policies and of notices of cancellation bearing *facsimile* signatures of defendant's officers. These they had authority to write, countersign, issue and deliver. In Auburn they had a subagent, so called, named Field. His authority seems to have been confined to soliciting applications for insurance and collecting premiums. Policies and renewal certificates duly executed came to him for his customers from the general agents. Whenever a policy or renewal certificate was sent to him, his account was charged by the general agents with the amount of the premium. From time to time, apparently on sixty days' credit, these charges were settled by payment or credit back, as the case might be.

Through Field's office the policy in question, dated May 17, 1924, was issued to James B. Durnin, who at that time was parole

clerk in Auburn Prison. The premiums for 1924, 1925 and 1926 were paid. When and the manner in which they were paid does not appear, because the trial court excluded evidence offered by plaintiff to show those facts. On or about May 1, 1927, a renewal certificate continuing the policy in force for the ensuing twelve months was sent to Field by the general agents, who in accordance with the course of business between them, charged Field's account with the amount of the premium. Thereupon Field mailed the certificate to the insured with a letter in which he said: " If, however, you desire not to continue this insurance, would it not be convenient for you to return this certificate that I am enclosing, so that I can return this to the company for credit." Along with the letter and certificate went a bill for the premium on Field's personal billhead — " Mr. James B. Durnin, * * * in account with John B. Field."

Under date of July 2, 1927, Field on his personal stationery wrote Durnin as follows: " Enclosed herewith please find a bill for $27.50 which is your Accident Insurance which was due May 1st. I trust that it will be convenient now to send me a check as I am very anxious to close this account out." The bill was in the same form as before. Shortly before that letter was written, Field had actually paid the general agents the amount of the premium, and the charge against him as to that item had been wiped out.

On August 17, 1927, Field again wrote Durnin, saying: " I would appreciate very much your check for $27.50, covering your accident insurance which you have with me. This dates back to May 1st, and I have already paid my May and June accounts, and I am carrying this on my books, therefore, I would appreciate * * * very much indeed your co-operation."

Under date of September 24, 1927, Field sent Durnin another letter in which there is a hint of possible cancellation. Then on October 26, 1927, Field notified Durnin by letter that he had ordered the cancellation of the policy, and two days later sent Durnin a bill, drawn in the same form as those theretofore rendered, for thirteen dollars and seventy-five cents, being the amount of the earned premium to November first, and told Durnin he would put the claim in the hands of Dun for collection unless paid by return mail.

On October 29, 1927, Durnin by registered mail received a notice of cancellation countersigned by Wadsworth & Olmstead, Managers, and dated at Syracuse, N. Y., October 27, 1927. It notified Durnin of the cancellation of the policy, effective at noon on November 1, 1927, requested him to forward the policy, last renewal receipt

and thirteen dollars and seventy-five cents earned premium, and said: " Inasmuch as no part of the premium due May 1, 1927, has been paid by you, there is no unearned premium to be refunded to you."

That notice of cancellation was sent at the request of Field. When it was sent the general agents, instead of sending Durnin thirteen dollars and seventy-five cents, the amount of the unearned or return premium, as plaintiff contends was necessary in order to make the cancellation effective, credited Field's account with that amount. In other words, the unearned premium was paid to Field.

In addition to the foregoing evidence there was testimony by Field and by one of his employees that Durnin on several occasions when asked to pay the premium said he was not sure whether he wanted to keep the policy; that he had not decided whether he wanted to or not. Durnin never paid the premium, neither did he return the policy or the last renewal receipt. On November 17, 1927, he was stabbed to death by an inmate of Auburn Prison.

The provision of the policy relating to cancellation reads as follows:

" 16. The Company may cancel this Policy at any time by written notice delivered to the Insured or mailed to his last address as shown by the records of the Company together with cash or the Company's check for the unearned portion of the premiums actually paid by the Insured."

Where the premium has been paid, that language clearly requires the return of the unearned portion thereof with the written notice in order to effect cancellation. (*Nitsch* v. *American Central Ins. Co.*, 152 N. Y. 635; *Tisdell* v. *New Hampshire Fire Ins. Co.*, 155 id. 163.)

Nor is the phrase " actually paid by the Insured " to be construed too literally. Payment to the company or to its authorized agents by a third party for the benefit of the insured would be payment by the insured within the meaning of the policy.

Whether the policy was effectively canceled or not depends upon whether the premium had been paid.

If the transactions between the general agents and Field with reference to the premium were a mere regulation of accounts between them carried on without the knowledge of Durnin and without any agreement, express or implied, by him in relation to the matter, then no payment could be said to have been made. (*Van Wert* v. *St. Paul F. & M. Ins. Co.*, 90 Hun, 465; *Wright* v. *Equitable Life Assur. Society*, 41 N. Y. Super. Ct. [9 J. & S.] 1.)

If, however, the contrary was true, then as between Durnin and the company, the transactions operated as a payment. (*Train*

v. *Holland Purchase Ins. Co.*, 62 N. Y. 598; *Buckley* v. *Citizens' Ins. Co.*, 188 id. 399.)

The evidence as it stands shows that Durnin, knowing the premium to have been charged to Field, retained the renewal certificate; it shows further that Field thereafter actually paid the premium and that Durnin knew it; it shows a series of bills rendered to Durnin by Field as for a personal indebtedness; it shows finally that Durnin did not comply with the request in the notice of cancellation to return the policy and the renewal certificate. Those facts might warrant an inference that Durnin accepted the offer of credit made by Field, thereby becoming the debtor of Field and ceasing to be the debtor of the defendant. If that was the case, then it would follow that the premium had been actually paid by the insured within the meaning of the contract. On the other hand, the testimony of Field and of his employee to the effect that Durnin never decided whether he wanted to continue the policy might, if believed, lead to the contrary result. We think the question was for the jury and that the verdict was erroneously directed.

There was further error in the exclusion of evidence offered to show the course of dealing between Durnin, Field and the defendant relating to the time and manner of premium payments on this policy from the time of its issue. What the parties had done for three years with reference to the payments of premium was relevant upon the probability or improbability of what is claimed to have been the understanding or agreement between them with reference to this premium, and as tending to justify the inference and belief of Durnin that as between himself and the defendant the premium had been paid. (*Kadelburg* v. *Hartford Acc. & Ind. Co.*, 223 App. Div. 169; affd., 248 N. Y. 654; *Cornell* v. *Travelers' Ins. Co.*, 120 App. Div. 459; affd., 192 N. Y. 587.)

The judgment should be reversed on the law and a new trial granted, with costs to appellant to abide the event.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law and a new trial granted, with costs to the appellant to abide the event.