## MASLIN v. COLUMBIAN NAT. LIFE INS. CO.

District Court, S. D. New York.
Jan. 11, 1932.

Benjamin Poller, of New York City, for plaintiff.

Platt, Taylor & Walker, of New York City (Frank A. Fritz, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The plaintiff moves for summary judgment under rule 113. of the Rules of Civil Practice of New York, on the ground that there is no substantial defense to the action. This remedy may be availed of in an action at law in the United States courts, under the Conformity Act (28 USCA § 724). Hess & Bro. v. Small (D. C.) 288 F. 995; Massee & Felton Lumber Co. v. Benenson (D. C.) 23 F.(2d) 107; United States v. Fiedler (D. C.) 37 F.(2d) 578.

The complaint is the ordinary one in an action on life insurance policies. It sets

forth that in 1927 the defendant issued two policies to the plaintiff's son, Samuel Maslin, insuring his life; that the plaintiff is the beneficiary under the policies; that Samuel Maslin died in 1930 while the policies were in full force and effect; that they contained clauses rendering them incontestable after one year from issuance except for nonpayment of premiums; and that the defendant has refused to honor the policies.

There are in substance two defenses embodied in the amended answer, by denials and separate statements. The first defense is that an imposter posing as Samuel Maslin made the application and took the physical examination for the policies; that the defendant, believing such person to be Samuel Maslin, issued the forms of policy sued on; and that on discovery of the facts it tendered back the premiums. The defendant therefore denies that it ever issued any policy on the life of Samuel Maslin. The second defense is that Samuel Maslin for years before 1927 had been suffering from tuberculosis and was confined in an institution for treatment of that disease; that he conspired with one of the defendant's agents to get insurance on his life by fraud; that he gave fraudulent answers on his application as to his health, occupation, and so on; and that the defendant was thus tricked by him and its agent into issuing the forms of policy sued on.

So far as the facts presented in the affidavits on this motion are concerned, I am of opinion that the defendant's affidavit sets forth sufficient to show that there are issues of fact to be tried. Its answer cannot be said to be a mere sham. The more important question on this motion is one of law, whether the matters pleaded by the defendant, if true, furnish any reason why it should not pay the policies, in view of the incontestability clause and the fact that the one year specified therein expired without contest on the part of the defendant. If the incontestability clause makes these defenses now unavailable, whether true or not, the motion for summary judgment should be granted. Wolpin v. Prudential Insurance Co., 223 App. Div. 339, 228 N. Y. S. 78; Malanti v. Metropolitan Life Insurance Co., 127 Misc. 674, 216 N. Y. S. 643.

A great deal of law has been written on the effect of the incontestability clause. The general rule cannot be questioned that after the passage of the stipulated time the insurance company is precluded from contesting the policy on the ground of false representations by the insured, even those made fraudulently. Wright v. Mutual Benefit Association, 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749; Clement v. New York Life Ins. Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650; Mutual Reserve Fund Life Association v. Austin (C. C. A.) 142 F. 398, 6 L. R. A. (N. S.) 1064; Great Western Life Insurance Co. v. Snavely (C. C. A.) 206 F. 20, 46 L. R. A. (N. S.) 1056. Many other cases might be cited. The view is that even though dishonest people are given advantages under incontestability clauses which any right-minded man is loath to see them get, still the sense of security given to the great majority of honest policyholders by the presence of the clause in their policies makes it worth the cost. The time allowed to the insurance company after issuance of the policy to investigate the case and uncover any fraud is deemed a fair check against trickery or deception by the insured. It seems clear, therefore, that in so far as the defendant relies upon an alleged conspiracy between one of its agents and Samuel Maslin, whereby the latter was to make an application containing false statements as to his health and was to be accepted by the defendant as a good risk, there is no defense to the policies. The fraud, abhorrent as it is if the facts pleaded are true, has no legal significance once the period set by the incontestability clause has expired. The fact that one of the defendant's agents was false to his trust and participated in the fraud does not change the situation. See People v. Alexander, 183 App. Div. 868, 171 N. Y. S. 881, affirmed in 225 N. Y. 717, 122 N. E. 887.

I think it equally clear, however, that the other defense, the alleged impersonation of Samuel Maslin by another who is said to have made the application and, more important still, to have taken the physical examination, is not barred by the incontestability clause. In substance, the defendant's position is that it never insured the life of the plaintiff's son at all and never had any contract or contractual dealings with him; that the man it insured was another person altogether, a healthy man whom the defendant's medical examiner saw and accepted as a risk and who chose to call himself Samuel Maslin; further, that there is nothing to show that this man is dead or that the plaintiff had any insurable interest in his life. In reality, this is not an affirmative defense at all; it may be proved under the denial that the defendant insured the life of Samuel Maslin. If the facts pleaded are borne out by the

proof, the defendant is under no liability to the plaintiff. There cannot be the slightest doubt that the person whom an insurance company intends to make a contract with and intends to insure is the person who presents himself for physical examination.

It is a rule applicable to contracts generally that where a man, pretending to be some one else, goes in person to another and induces him to make a contract, the resulting contract is with the person actually seen and dealt with and not with the person whose name was used. Phelps v. McQuade, 220 N. Y. 232, 115 N. E. 441, L. R. A. 1918B, 973; Eastern Exchange Bank v. Fidelity & Deposit Co., 245 N. Y. 340, 157 N. E. 260, 52 A. L. R. 1373; Gotthelf v. Shapiro, 136 App. Div. 1, 120 N. Y. S. 210; Robertson v. Coleman, 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471; United States v. National Exchange Bank (C. C.) 45 F. 163; Williston on Contracts, § 1517; Ashley, Mutual Assent in Contracts, 3 Columbia Law Review, pages 71, 73, 74.

In Phelps v. McQuade, supra, one Walter Gwynne went to the plaintiffs and representing himself to be Baldwin Gwynne, a man of good credit, bought jewelry from them on credit. He sold the jewelry to the defendant who paid value and had no notice. On learning of the deception the plaintiffs brought replevin to recover the goods. In holding that they could not recover because title had passed, Judge Andrews said (page 235 of 220 N. Y., 115 N. E. 441, 442): "Where the transaction is a personal one, the seller intends to transfer title to a person of credit, and he supposes the one standing before him to be that person. He is deceived. But in spite of that fact his primary intention is to sell his goods to the person with whom he negotiates."

In Gotthelf v. Shapiro, supra, one Hyman Shapiro had dealings with the plaintiffs, using the name of his brother Max, and induced them to take a mortgage executed in the name of Max. Max turned out to be an infant. The mortgage was held to be that of Hyman. "I perceive no reason why the plaintiff cannot now foreclose the mortgage as against the Max J. Shapiro who was a mortgagor, even though he generally bears the name of Hyman Shapiro. Throughout the transaction Hyman adopted Max J. as his own given name. * * * It is the identity of the individual that is regarded, not the name that he may bear or choose to assume. * * * The fact that there was a living person whose name was Max J. Shapiro did not make that mortgage the instrument of that person." 136 App. Div. at page 3, 120 N. Y. S. 210, 213.

In the Eastern Exchange Bank Case, supra, the plaintiff sued on an insurance policy indemnifying it against loss by forgery of signatures of its depositors. One Palmer opened a deposit account with the plaintiff, using the name of John Hogan. He then got possession of checks payable to Hogan, indorsed them and deposited them in his account. He later drew out the proceeds. The plaintiff was obliged to make good to the real John Hogan. In holding that there was no forgery of the signature of one of the plaintiff's depositors and that there could therefore be no recovery, Chief Judge Cardozo said (page 343 of 245 N. Y., 157 N. E. 260): "The plaintiff in opening the account had no thought of contracting with any one except the man who stood before it. The fact that for the purpose of becoming a depositor he assumed a fictitious name did not alter his identity. Phelps v. McQuade, 220 N. Y. 232, 115 N. E. 441, L. R. A. 1918B, 973; Strang v. Westchester County Nat. Bank, 235 N. Y. 68, 70, 71, 138 N. E. 739. John Hogan, the rightful owner of the checks, did not become a depositor in the bank within the meaning of this bond by force of the conversion of his checks under color of a forged indorsement."

So here, if the defendant can prove that a healthy man impersonated a diseased Samuel Maslin and took the medical examination under the name of Samuel Maslin, then the diseased Samuel Maslin who was the plaintiff's son did not become a policyholder, any more than the real John Hogan became a depositor in the case just cited. The defendant's only contract was with the man who made the application and took the examination.

It is obvious that the interposition of these matters by the defendant is not a contest of the policies within the meaning of the incontestability clause. The insurer does not by this defense dispute the validity of the policies issued by it. It says in effect that the man it insured under these policies was not the plaintiff's son, Samuel Maslin. Other defenses coming much closer to a contest of the policy have been held not barred by an incontestability clause. New York Life Ins. Co. v. Manning, 156 App. Div. 818, 124 N. Y. S. 775, 142 N. Y. S. 1132, affirmed in 213 N. Y. 665, 107 N. E. 1082; Brady v. Prudential Life Ins. Co., 5 Kulp (Pa.) 505;

Bromley's Adm'r v. Washington Life Ins. Co., 122 Ky. 402, 92 S. W. 17, 5 L. R. A. (N. S.) 747, 121 Am. St. Rep. 467, 12 Ann. Cas. 685; Clement v. New York Life Ins. Co., 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. Rep. 650; Illinois Bankers' Life Ass'n v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379.

There is therefore a substantial issue to be determined on trial, and the motion for summary judgment will be denied.