CLARENCE H. KLEIN, Appellant, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

Fourth Department, November 16, 1938.

*George T. Vandermeulen,* for the appellant.

*Roy P. Ohlin* [*Mason O. Damon* of counsel], for the respondent.

CROSBY, J. On March 22, 1929, in consideration of a premium of nineteen dollars, defendant issued an accident policy to Raymond F. Klein, by the terms of which it agreed to pay to plaintiff, a brother of the insured, the sum of five thousand dollars, if, during the life of the policy, the insured received injuries which, independent of other causes, resulted in his death. The policy provided for a

renewal "with the consent of the Company [defendant]" from year to year, until the insured reached the age of sixty-five years, upon payment, annually, of the nineteen dollars premium. The policy also provided for a grace period of thirty-one days for making payment of premiums, without interest, after they were due, and also provided that during such thirty-one-day grace period the policy should continue in force.

The insured paid successive annual premiums until, and including, March 22, 1932, but did not pay the premium which fell due on March 22, 1933, nor did he pay it during the succeeding thirty-one-day grace period. Several weeks prior to March 22, 1933, the insured went twice to the branch office of the defendant and stated that he did not intend to continue the insurance beyond March 22, 1933; that "he didn't intend to renew the policy, and that he wanted it cancelled. * * * He said that he wanted the policy cancelled just as soon as it [the premium] was due."

Shortly before these statements of the insured were made to the defendant's branch office manager, the insured moved to another district over which a different branch office of defendant had control. The latter branch office apparently lacked knowledge of the insured's intention not to renew the policy, and, on April 27, 1933, and after the expiration of the grace period, a collector working out of the latter branch office called at the house where insured boarded to collect the premium. The insured not being at home, his landlady, wishing to further the interest of her boarder, the insured, volunteered to pay the premium with the understanding that, if her action did not meet with the approval of the insured, the money would be returned to her. The defendant's agent assured her that, if the insured did not wish to keep the policy alive, her money would be returned to her.

The insured did not return to his boarding place until May 8, 1933, when, learning of what his landlady had done, he promptly repudiated her action in his behalf and personally notified defendant's agent of his disapproval, and demanded the return of the premium. On May ninth defendant's manager wrote to the home office of defendant, asking for the return of the premium, and also wrote to the insured a letter confirming the conversation in which the insured repudiated the action of his landlady and asked for the return of the premium. On May sixteenth defendant sent the insured a written notice of the cancellation of the policy, as of March twenty-second, and inclosed a check for the premium which the landlady had paid.

Meanwhile, on May thirteenth the insured received an accidental injury from which he died on May fourteenth. The policy and

renewal receipt, being found among the effects of the insured, after his death, the plaintiff sued on the theory that the policy was in force at the time of the accident to, and death of, the insured, and that defendant could not thereafter cancel it.

All the foregoing facts are clear and undisputed. At the close of all the evidence both sides moved for a direction of a verdict and stipulated that the jury might be discharged and the verdict directed by the court, as if the jury were present, when the court should decide the question of law involved. Thereafter a verdict for the defendant was directed by the court. The appeal is from the judgment entered thereon.

We decide that the trial court's judgment was correct. When the annual premium was not paid, within the thirty-one days after it was due, the policy lapsed. There was then no contract. It required a new contract to revive the old one. It is fundamental that the new contract could not be made unless and until there was a meeting of the minds of the parties to it. There never was such a meeting of minds. Although the insured might have ratified the landlady's action in his behalf, he never did so. He not only repudiated her act, but he so notified the defendant's agent. Until the moment of the death of the insured no contract was ever made by which the former contract was revived. His death put an end to any possibility of such a contract being made.

Plaintiff relies upon a condition of the policy which provides that " If default be made in the payment of the agreed premium  *  *  * the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the policy," etc. But the premium was paid by the landlady, and accepted by the agent, upon the condition that the insured should ratify the landlady's action in his behalf. The insured himself broke the condition which would have given effect to the continuance of the policy. He, not defendant, made the choice. Under the facts in this case is there any doubt that, had the insured lived, the landlady could have recovered from the defendant the amount she paid? Defendant ought not to be placed in the position where it must return the premium if the insured lives, but must pay the policy if he dies.

Appellant makes the point that defendant cannot vary the terms of the renewal receipt that its agent gave when the landlady paid the premium. A receipt is not a contract ( *Komp* v *Raymond*, 175 N. Y. 102), and even in the case of a contract a conditional delivery may be shown. (*Savage Realty Co., Inc.*, v. *Lust*, 203 App. Div. 55; *Benton* v. *Martin*, 52 N. Y. 570.)

The question involved in this case is so elementary that the citation of authorities is not necessary. When the insured refused to abide by the action of his landlady in his behalf, and so notified the agent of the defendant, there was entirely lacking the essential element of a contract between the insured and the defendant. The insured did not want the insurance, he had the right to refuse to accept it, he did refuse it, he said he would not be bound by the unauthorized act of his landlady. He could not possibly have done more than he did to prevent a policy contract from coming into existence. The contract which he refused to make for himself, in his lifetime, cannot be made for him after his death.

The following cases are somewhat in point: *Lofaro* v. *John Hancock Mut. Life Ins. Co.* (239 App. Div. 54); *Pequot Mfg. Corp.* v. *Equitable Life Assur. Soc.* (253 N. Y. 116); *N. Y. Life Ins. Co.* v. *Manning* (156 App. Div. 818; affd., 213 N. Y. 665); *Durnin* v. *Ætna Life Ins. Co.* (228 App. Div. 428); *Horowitz* v. *Cohen* (172 id. 700); *Wilmot Engineering Co.* v. *Blanchard* (208 id. 218).

The order appealed from was merged into the judgment. The judgment should be affirmed, with costs.

All concur. Present — CROSBY, LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Judgment affirmed, with costs.