GARRISI *v*. KASS.

1. BROKERS—COMMISSION—READY, WILLING, AND ABLE—EVIDENCE.
   In an action by a broker for commission on the sale of
   land on a written contract, "price $7,000, amount down,
   $1,000, $100 every six months and interest," where plain-
   tiff furnished a buyer who went to see defendant with
   $900 in cash, and who owned property worth $6,000 or
   $7,000, and was willing to enter into agreement to buy
   on defendant's terms, plaintiff produced a buyer who was
   ready, willing, and able to buy.[1]

2. TRIAL—BROKERS—COMMISSION—INSTRUCTIONS.
   The testimony being conclusive that the broker had pro-
   duced a buyer who was ready, willing, and able to buy,
   the court below was not in error in instructing the jury
   that they might so find, from the testimony.

Error to Wayne; Hosmer, J. Submitted April 3,
1918. (Docket No. 29.) Decided June 3, 1918.

Assumpsit in justice's court by John Garrisi against
Mary Kass for commissions on the sale of real estate.
There was judgment for plaintiff, and defendant ap-
pealed to the circuit court. Judgment for plaintiff.
Defendant brings error. Affirmed.

*Albert E. Sherman*, for appellant.

*Anthony Maiullo*, for appellee.

In July, 1916, the defendant, Mary Kass, signed the
following paper:

"DETROIT, MICHIGAN, July 18, 1916.
"I hereby appoint John Garrisi the sole and ex-
clusive agent for the sale, barter, or exchange, at the
prices and terms of the property herein mentioned and
described.
"For and in consideration of its services and efforts
in this manner I agree to pay John Garrisi a cash com-
mission of 3 per cent. on selling price on said property.

[1]See note in 21 L. R. A. (N. S.) 935.

"I further agree to furnish such abstract and deed and other papers as may be necessary to perfect a sale.

"Property listed, 773 Riopelle street, frame, 12 room, two stories, no bath, gas, electric, lot 30x115, sidewalk, street paved, cellar, price $7,000.00, amount down $1,000, $100.00 every six months and interest.

> "Owner, MARY KASS,
> "623 Canfield Ave. E.

"Accepted by John Garrisi.

"This contract can be changed or terminated by giving thirty days notice in writing."

Some time between the 20th and 23d of August of that year, the plaintiff told Mrs. Kass he had a purchaser for the property at the price and on the terms mentioned in the agreement, and offered to pay her $100 on account. She refused to accept the money, and, according to plaintiff's testimony, said to him:

"My boy isn't in Detroit now; as soon as he comes, we will do the agreement."

A few days later he called again and again offered her $100 on account, which she refused to accept, saying:

"I am getting tired; don't bother me now, don't bother me, don't bother me."

On the 27th or 28th of August he tried to see her again, the prospective purchaser (who was his brother) being with him, but she was not at home, and her daughter who was there informed him that "they didn't want to sell any more." The defendant persisted in her refusal to sell, the plaintiff brought suit in the justice's court and recovered judgment for the amount of his commission under the agreement, $210. Upon appeal to the circuit court, the defendant was allowed to amend her plea so as to give notice of a defense of fraud in the procurement of the agreement, in that she was unable to read English well and signed the agreement upon the faith of the plaintiff's

representation that it provided that in case he failed to sell the property within 30 days from the date thereof, there would be no charge made to her, but that the agreement would terminate and be void. A further defense outlined in the amended plea was that plaintiff never found a purchaser who was ready, willing and *able* to purchase and that there had been an entire failure of consideration. Upon the trial in the circuit court, the defendant testified, as alleged in her plea, that the plaintiff had represented to her that the agreement, by its terms, would terminate at the end of 30 days from its date, if plaintiff failed to find a purchaser within that time. It appears from the testimony of Mrs. Kass and her son that they were both present at the time that the agreement was signed, and that before Mrs. Kass signed it, she handed it to her son to read over and that he read it and knew what it contained. She testified,—

"He just looked it over that time. I said it is only for thirty days. He says yes."

Plaintiff did not produce a purchaser within the 30 days. It does not appear that any notice of termination of the contract was given as provided by its terms. Mr. Vincent Garrisi, the prospective purchaser, testified that on the day he went with plaintiff to close the deal, he had with him $900 in cash, and that he owned property worth six or seven thousand dollars. Defendant contended that, inasmuch as the cash payment was to be $1,000, plaintiff had failed to produce a purchaser *able* to carry out the agreement. The court instructed the jury that plaintiff had made a sufficient showing of ability on the part of the prospective purchaser to carry out the terms of the agreement, and left to their determination the question of the procurement of her signature by fraud and misrepresentation. The jury found in favor of plaintiff, and judgment for $210 was entered.

KUHN, J. (*after stating the facts*). Counsel for appellant bases his claim for reversal of the verdict of the jury on two grounds:

1st. That the plaintiff did not bring a purchaser ready, willing and able to buy, and,

2d. That the charge of the court was erroneous and prejudicial.

We are of the opinion that there is no merit in the first contention of the appellant. The party produced by the plaintiff, who was to purchase the property and was willing to enter into the agreement, had at the time $900 cash in his pocket and was the undisputed owner of property worth six to seven thousand dollars. We think that the learned trial judge was clearly correct in saying that under these circumstances the plaintiff had produced a purchaser who was ready, willing and able to buy the property on the terms specified by the principal, and that, having produced such a purchaser, the broker became entitled to the commission whether or not the sale was made. An examination of the record shows also that the defendant, at the time the purchaser was produced, made no claim that the purchaser was unable to buy the property, but placed her refusal on other grounds.

Fault is found with the language of the trial judge, where he said in charging the jury,—

"I think you may rightly find from the testimony the ability to carry out the purchase which he proposed to make," etc.

Being of the opinion, as we have already stated, that the testimony is conclusive that the purchaser produced was ready, willing and able to buy, there was clearly no error in the trial judge instructing the jury in the way he did.

We affirm the judgment.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.