## McDowell v. Lewis.

(Decided June 12, 1923.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Brokers—Are Entitled to Commission on Procuring Purchaser on Owner's Terms or Accepted by Owner.—A broker is entitled to a commission, when he furnishes a purchaser who is ready, willing, and able to buy the property on the terms proposed, or on terms satisfactory to the principal, or a purchaser who is accepted by the principal on satisfactory terms.

2. Brokers—Can Recover Commission After Principal's Repudiation, Though Contract was Unenforceable.—Where a broker produced a buyer with whom his principal made a parol contract of sale, which was repudiated by the principal, it appearing that the purchaser was ready, able, and willing to perform, the broker is entitled to his commission, though the contract was unenforceable.

3. Corporations—Persons May Contract to Sell Corporate Stock They do Not Own.—A person may make a valid contract to sell a greater amount of stock in a corporation than he owns, and thereby legally obligate himself to deliver the stock.

4. Corporations—Contract Held Valid as One for Sale of Stock of Corporation to be Formed.—A contract whereby one party thereto agreed to sell all the stock in an existing corporation to a corporation to be formed by the other party, and to take in payment a specified amount of stock in the new corporation, was not invalid as an attempted agreement for the purchase by the unorganized corporation of the other stock, but was a valid agreement between the parties thereto for exchange of stock in the two corporations.

5. Brokers—Corporations—Contract to Form Corporation to Purchase Stock is Binding.—A contract entered into by an individual for valuable consideration to form a corporation to purchase the stock of an existing corporation on terms satisfactory to the owner of the stock, is binding upon the person making the contract, though it would not bind the corporation subsequently formed, and therefore a broker is entitled to his commission for procuring such contract, which was satisfactory to the stockholder who employed him to sell the stock, especially where he alleged that his principal repudiated the contract, and that the purchaser was ready, willing, and able to perform.

6. Pleading—Amended Petition Not Inconsistent with Original Relying on Invalid Contract which Induced the Promise Pleaded by Amendment.—Where the original petition was based on an invalid contract, an amended petition relying upon that invalid contract as an inducement for an oral agreement, ratifying and confirming the invalid contract, and promising to pay the amount due plaintiff thereunder, was not inconsistent with the original petition.

7. Pleading—Allegation of Ratification Held Properly Stricken Out as Evidentiary.—Where the contract alleged in the original petition was valid in so far as it affected the parties, the ratification thereof or agreement by defendant to pay the amount due plaintiff thereunder was evidential only, and an order striking from the amended petition the allegations of ratification will not be disturbed.

HELM BRUCE and J. VERSER CONNER for appellant.

BURWELL K. MARSHALL for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The John C. Lewis Company is a mercantile corporation with a capital stock of 2,500 shares of the par value of $100.00 each. In April, 1920, John C. Lewis and R. A. McDowell agreed in writing for the latter to undertake the sale of the property and goodwill of the corporation or of its capital stock at the price of $1,000,000.00, or such amount as might thereafter be agreed to by Lewis, McDowell to receive a sum equal to 5% of the sale price

realized by the company or its stockholders. By endorsements appearing on the contract the sale price was later reduced to $600,000.00, and a statement made by Lewis that he owned 2,000 shares of the capital stock and bound himself to deliver it and such other shares of stock as he could secure or control.

Proceeding under the contract, McDowell procured a purchaser, one Denton, with whom Lewis entered into a contract in writing regarding the sale of the property. This was in the form of a letter signed by Lewis, addressed to Denton and accepted by him, its material parts reading as follows:

"Louisville, Ky., June 13, 1920.

"Mr. C. E. Denton,
"Cincinnati, O.

"Dear Sir:

"Confirming our conversation of even date relative to the sale of the capital stock of the John C. Lewis Co., it is agreed that the present stockholders owning all of the 2,500 shares of said capital stock shall sell same to a new corporation to be organized by you and R. A. McDowell, as our attorney, and shall receive therefor the following cash and securities; 3,000 shares of 8% accumulative preferred stock, to be fully protected and preferred in every possible manner, of the par value of $100.00 each; 1,470 shares of common stock and $100,000.00 in cash. Said new corporation shall have a capital stock of $300,000.00 preferred, to be divided into 3,000 shares of preferred stock of par value of $100.00 each and 3,000 shares of common stock of no par value.

"You are to buy the other 1,530 shares of common stock and pay the new corporation therefor the sum of $100,000.00 in cash, which cash shall be used in making the cash payment to the present stockholders.   .   .   .

"The transfer of securities shall be consummated when the new corporation is organized and authorized to do business, at which time possession of the store and property shall be given.

"Yours very truly,
"(Signed) JOHN C. LEWIS.

"Accepted,
   "ELROY C. DENTON.
   "Witness as to both sginatures,
   "R. A. McDOWELL.
   "Executed in triplicate."

This suit was brought by McDowell to recover 5% commissions on the sale price of $500,000.00. The original petition set out both contracts; alleged that plaintiff found a purchaser who was accepted by the defendant and that his commissions were earned and unpaid.

A demurrer was sustained to this, and by amendment it was substantially pleaded that in the sale the price of the Lewis stock was fixed at $500,000.00; that subsequent to its execution the defendant acknowledged and accepted the services he had rendered in the transaction and agreed to pay him $25,000.00 therefor; that Denton was at all times ready, able and willing to carry out his part of the contract in every detail, but that within five days after its execution the defendant changed his mind and notified Denton that he would not perform his part of it and thereby prevented Denton from proceeding further. The court sustained a motion to elect and plaintiff failing to do this, it struck certain parts of the answer, sustained a demurrer to the petition as amended and dismissed same and this appeal results.

The general principles of law applicable to cases of this character are pretty well established in this state. To entitle a real estate broker to a commission he should furnish a purchaser who is ready, willing and able to buy the property according to the terms proposed or on terms satisfactory to the principal, or a purchaser who is accepted by the principal on satisfactory terms. Coleman v. Mead, 13 Bush 358; Phillips' Extrx. v. Rudy, 146 Ky. 784; Futrell v. Reeves, 165 Ky. 282.

Where a broker produced a buyer and the parties made a parol contract of sale and this was repudiated by the seller, it appearing that the purchaser was ready, able and willing to perform, the commissions were allowed though the contract was unenforceable, the court saying:

"If the plaintiff was authorized to make the sale as agent employed by the defendant he is, under the circumstances, entitled to compensation, notwithstanding that the purchaser could not have been compelled to carry out his contract if he had chosen to set up the statute of frauds. It was the defendant's own fault that the sale was not consummated." Pope v. Caddell, 125 Ky. 837.

To the same effect is the text in R. C. L., vol. 4, page 307, and the same principle is announced in Mueller v. Nugent, 187 Ky. 61. Nugent procured Dr. Abell as a purchaser for some corporate property; the corporation

repudiated the contract, claiming its president had no authority to make the contract. Nugent sued the latter for his commission. He pleaded that the contract was unilateral and unenforceable. As to this the court said:

"Appellant insists that the contract made between Dr. Abell and the realty company was not enforceable, being unilateral, but we find no merit to this contention. As a matter of fact the corporation refused to carry out the contract to sell and convey the real property which its president had entered into in its name. Dr. Abell was willing to perform his part of the contract and of this there is no doubt. There is no merit in appellant's contention that Dr. Abell might have declined to perform his part of the contract when it is clearly shown that he was anxious so to do. Why quibble about what might have happened under different circumstances when the facts establish the good faith of Dr. Abell and Mr. Nugent with respect to this contract?"

As we understand, the learned judge of the lower court was of the opinion that the writing signed by Lewis and Denton was not in the nature of a sale of stock, but that it was an agreement for a proposed corporation to purchase the stock of the Lewis company, and as that corporation was not in existence, no one could speak for it or contract in its name, or impose any obligation upon it, consequently there was no sale, and the contract itself was a nullity binding on no one.

Naturally a corporation cannot speak or act before its incorporation and no one, not even a promoter, is authorized to speak for it, and if this writing is to be regarded as an attempted contract between John C. Lewis and an unorganized corporation the ruling is correct, but it occurs to us that this is too narrow a view to take of the transaction. Assuming the averments of the petition as true and considering it with the exhibits, this is an agreement between Lewis and Denton as individuals for a sale of all the stock of the John C. Lewis corporation. Lewis may not have been authorized to do this, but under the authorities cited it cannot be doubted that he could legally bind himself to sell and transfer any or all of the shares of that corporation. By the same token, if the proposed corporation had been in existence Denton could have made a valid contract with Lewis and bound himself to sell and transfer to him any specified number of shares of that corporation and for the payment to Lewis of $100,-

000.00 cash, either to be paid to him by the corporation or by Denton. His individual liability would be determined by the contract and not by the number of shares he owned, or by the authority or lack of authority he possessed from the corporation.

If individuals may thus contract as to stock in existing corporations we see no reason why they may not enter into a contract such as this for the organization of a new corporation and the purchase of this property by a payment in cash and a transfer of the stock therein. There is nothing illegal in the transaction, nor is the suggestion necessarily impracticable, and it is based on sufficient consideration.

The same principle was involved under similar facts in the case of Electric Fireproof Co. v. Smith, 99 N. Y. S. 37, in which a contract was made whereby defendant undertook to organize a corporation and plaintiff agreed to transfer to this corporation its stock and materials, and accept payment partly in cash and partly in stock in the new corporation. For some reason defendant was unable to organize the new corporation and was sued for damages. In reference to the contract the court said:

"The agreement between the parties was not unlawful or void as against public policy . . . the whole contract was between private parties for accomplishment of an object legitimate in itself. It provided, among other things, for the details of a scheme or plan for the organization of a new corporation with a fixed capital stock, which stock was to be issued for properties and writings and when issued to be disposed of in a certain manner.

"What the defendants assumed to do was to form a corporation on a particular basis, and it will be presumed that every requirement of law would be complied with in the organization of that corporation, nothing to the contrary appearing. The obligation assumed by the defendants to form the projected new corporation included that of seeing that the scheme embodied in the contract was lawfully carrie dout. The defendants took upon themselves the risk of being unable to organize a corporation, the stockhoders or directors of which would assent to the scheme detailed in the contract.

"Concerning other grounds upon which the defendants' motions to dismiss the complaint were based, it is sufficient to say that, according to our understanding of

the contract, a good consideration for the engagement entered into by the defendants with the plaintiff is shown. The plaintiff obliged itself to sell all its business and property, and, if that sale were consummated, the advantage to accrue to the defendants is apparent on the face of the contract. The plaintiff was bound to make the sale to the corporation, if that corporation were formed within the time named in the agreement. Even if the contract could-not be specifically enforced by a corporation duly formed, the defendants would have their action for the breach, if the plaintiff failed to perform. We think that it is indisputable that the plaintiff's change of position with respect to its own property, and its obligations assumed under the contract with the defendants, furnished a consideration moving to the defendants. Nor is the contract void for uncertainty and indefiniteness. What each party was to do is plain, and we think there is an express promise contained in the contract that the plaintiff will transfer and convey its property and everything embraced within the contract on the formation of the contemplated new corporation.''

We conclude that as to McDowell the contract between Lewis and Denton was valid and under the rule above stated when such contract was made upon terms acceptable to Lewis he became liable for the commissions although the terms of sale were changed from those originally authorized. (Futrell and Coleman cases, *supra.*) This conclusion is fortified by the fact that the contract itself provided for a change in the terms of sale. Even if unenforceable, in view of the allegation that Denton was ready, willing and able to carry out all the terms of the contract, Lewis should have given him a reasonable time for that purpose and could not bar appellant of his commissions by repudiating the contract. It follows that the petition as amended stated a cause of action.

If the contract between Denton and Lewis was invalid or could not be regarded as a compliance with the contract between Lewis and McDowell, it could have been an inducement for Lewis to promise to pay McDowell for his services, and in that view of the case, the amended petion, pleading, ratification, acceptance and the promise to pay by Lewis were not inconsistent with the original petition. But in view of the conclusion we have reached as to the validity of the Denton contract, in so far as it affects McDowell, the ratification or agreement of Lewis would

have been evidential only and not necessary to be pleaded; therefore so much of the order as strikes this part of the pleading will not be disturbed.

Judgment reversed for proceedings consistent with this opinion.