BEATTY *v.* GOODRICH.

1. BROKERS—COMMISSION EARNED WHEN CONTRACT COMPLIED WITH.
   Under a contract whereby a real estate owner agreed to
   pay a broker a commission for finding a buyer ready and
   willing to consummate a deal on the owner's terms, the
   commission was earned when such buyer was found al-
   though no sale was consummated because the owner re-
   fused to go on with the deal.

2. SAME—COMMISSION COMPENSATION FOR SERVICES.
   A broker's commissions are generally recognized as com-
   pensation for services, and when the services stipulated
   for have been rendered he is entitled to his commission.

3. FRAUDS, STATUTE OF—MEMORANDUM OF SALE—SUFFICIENCY.
   Where a memorandum of the terms of sale was made and
   signed by the broker as agent of the seller and accepted
   by the vendee by marking it O K, followed by his initials,
   and paying a deposit thereon, it was sufficient; the statute
   of frauds not requiring it to be actually signed by the
   vendee.

4. BROKERS—FAILURE TO BRING PARTIES TOGETHER.
   The fact that the broker did not bring the proposed pur-
   chaser and the seller together would not defeat his right
   to recover his commission, where there is no question of
   double agency or secret interest of the broker involved,
   and the seller went to a distant city and refused to go
   on with the deal.

5. SAME — UNAUTHORIZED ORAL PROMISE BY BROKER TO FURNISH
   ABSTRACT WOULD NOT DEFEAT RIGHT TO COMMISSION.
   The broker's right to recover his commission was not de-
   feated by his oral promise to furnish proposed purchaser
   an abstract, although not authorized to do so by the seller,
   where the memorandum agreement contained no such re-
   quirement, and the owner made no objection when re-
   quested to rush the abstract to save her interest.

Error to Wayne; Hunt (Ormond F.), J.   Sub-

On performance of contract by real estate broker to find a pur-
chaser or effect an exchange of his principal's property, see notes
in 44 L. R. A. 593; 46 L. R. A. (N. S.) 129.

mitted June 8, 1923.    (Docket No. 98.)    Decided October 1, 1923.

Assumpsit by Joseph C. Beatty against Annie Goodrich for commissions on the sale of real estate.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Albert McClatchey* and *Harry J. Weber,* for appellant.

*Prentis, Mulford, Pugh & Fitch,* for appellee.

STEERE, J.    Plaintiff is a licensed real estate broker located and doing business in the city of Detroit. Defendant is a resident of New York, who formerly lived in Detroit and owns in the latter city a piece of real estate located at the corner of Milwaukee avenue and Third.    She had negotiations with plaintiff while on a visit to Detroit which resulted in her giving him the following written authority to negotiate a sale of the property for her:

"Detroit, May 28, 1920.

"No.............

"To J. C. Beatty—for $1.00 paid me.

"And in consideration of valuable services performed, and to be performed by you, I, the undersigned, hereby give to you for a term of five days the exclusive sale of the following described property, to wit:

"East 34 ft. of lot 43, block 3, Moran and Moross Subn. of part of sections 31 and 32, T. 1 S., R. 11 and 12 E., and part of Baker and Forsyth farms, N. E. corner of Milwaukee and 3d, Detroit, 34 x 193, according to the plat thereof recorded in L. 8 of plats, on page 15, and you are hereby authorized by me to accept a deposit to be applied on the purchase price, and to bind the sale of said above described property upon the following terms, viz.: twenty thousand ($20,000) dollars cash, or fifty-five hundred ($5,500) dollars cash, which shall include interest at 6 per cent., and in

case you find a buyer ready and willing to consummate a deal on the foregoing terms or in case of sale by you, said above described property during the life of this contract, I agree to pay you 3 per cent. of sale price, as a commission, which said commission is to be retained by you out of the first money paid on said property.    Upon the receipt of payment according to this contract, I agree to make a good and sufficient conveyance of said property by Burton land contract.

"This agreement shall be in full force for the term above specified.

"I do here state that I am in peaceful possession of the above described property and that my title to same is good and is without incumbrance, except case now in court which has been compromised in my favor.

"Owner: ANNIE GOODRICH    (Seal)
"Address 126 W. 66 Corner
        Broadway, N. Y."

A divorce suit was pending between defendant and her husband in New York at the time of her visit in Detroit, which as she states was made mainly to raise money for the purposes of her divorce case. She stopped at the Statler hotel and at first unsuccessfully made efforts to negotiate a loan.    During that time she had several interviews with plaintiff in which he states she verbally authorized him to sell her property at $18,000, which she refused to accept after he found a purchaser and so reported to her.    She then raised the price to $20,000, and just before leaving for New York executed the written authority quoted.

Within the five days specified plaintiff secured a purchaser able, willing and ready to purchase the property at the price stated on the terms proposed, who made a deposit as evidence of good faith and testified he then was able to pay the entire purchase price in cash if she desired.

On June 1, 1920, plaintiff mailed defendant the following letter:

"Dear Mrs. Goodrich: I know you will be more than

pleased to learn that I have sold your property that you gave me the option on just before you left for New York. I have taken a deposit on the terms of the option and the deal is to be closed ten days after receipt of abstract showing marketable title in your name.

"I suggest that you advise anybody else whom you may have told to sell this property that you have sold same. You should do this in justice to them, and also to the man who purchased it, as he does not know what he wants to do with it.

"I also suggest that you have the abstract rushed as every day lost now is a loss of over $3 a day interest to you. You should also write the party who was going to make you the loan and tell him that you have sold the property and will not want the loan. Of course, you have the liberty to take a loan, if you care to.

"If there is anything that you wish me to do for you here, please call on me."

Defendant received this communication on June 4th but did not answer it until June 11, 1920. In her reply she discusses the loan which she had been trying to negotiate and states that, before receiving plaintiff's communication on June 4th, she had mailed a letter to an agent in Detroit who was negotiating a loan for her stating that she would want the money for sure, that there was no reason that she should care to sell her property now, concluding:

"As yet I have not received the abstract, although I know it was left at Burton's June 3d, a rush order. As soon as I get word I shall go to Det. and will probably see you."

On June 14th plaintiff answered this letter referring to certain transactions in which defendant changed her mind and refused to make a sale of the property at the price she had authorized when a customer was found, that she had put her increased price then stated in the written authority given him to sell it for, saying in part:

"Your letter of June 11 received and noted. There are several things that you write about which I do not quite understand. * * * At the depot you told me that you told the man who had promised to make you the loan that he could sell the property at $20,000. This was after you knew that you could get the loan so you see you gave me the option after you knew that you could get the loan and also the sale price was put on it by you and not me.

"I also note that you write that you will 'probably' see me when you come to Detroit. I am afraid you do not realize that this sale of your property must be consummated because you gave me an option authorizing me to 'accept a deposit to bind the sale' on the terms of the option. I have done this and notified you within the five days so this sale must be completed. * * * However, I do not anticipate any trouble as I may have misunderstood your letter.

"If you care to get a loan on this property you can do so. In fact, I advise that you do so as there is a way in which you can handle this deal whereby you can save some money on your income and profit tax. I will explain this to you when I see you. Your abstract has been delivered to Benjamin & Betzoldt. It is not necessary for you to come to Detroit to close this deal as it could be handled by your attorney but I presume you will have to come here to settle your other matters.

"If there is anything that you wish me to attend to please call on me."

On June 26, 1920, defendant wrote plaintiff stating she had tried unsuccessfully several times to get him on the wire the day before, and was writing him to state that he correctly understood her previous letter, but saying:

"You are in error when you write I kept raising my price. $20,000 was the only thing I would consider, and that was when I could not make the loan. If I could make a loan I would not sell at that price."

On June 28th plaintiff answered this letter stating he could not understand her attitude in regard to the sale which he had negotiated for her, would not enter

into any further lengthy discussion, asked whether or not she intended to complete the sale of the property that she had authorized him to make for her and requested an immediate answer, stating that if he did not hear from her within 10 days he would insist on payment of his commission anyway.

The testimony is conclusive that within the five days specified in his written authority plaintiff found a purchaser willing, ready and able to buy the property according to the terms specified and who made a deposit of earnest money as evidence of good faith.    Plaintiff testified to that transaction in detail, and the proposed purchaser, George Kolowich, a banker of Hamtramck, testified that being interested in some property around General Motors building he had favorably entertained Mr. Beatty's proposal to sell him this property for $18,000, and after she raised it to $20,000 he finally agreed to take it at that price on the terms specified in Beatty's written authority, renewed his deposit and was given by Mr. Beatty a memorandum of their agreement, which he initialed as accepted and made a memorandum on the back of it.    He identified the paper, with his own initials to the "O K" and his memorandum on the back, reading as follows:

"Hamtramck, Mich., May 27, 1920.
"$300.00.
"Received of G. J. Kolowich, three hundred and 00/100 dollars for deposit on N. E. corner 3d and Milwaukee (Mrs. Goodrich's property) at $18,000 — about $5,000.00 down—1 per cent. of balance monthly.
"OK.   G. K.
"May 29, 1920.
"$20,000—$5,500 down.
"MERCHANTS AND MECHANICS BANK
Per J. C. BEATTY
"Above deposit to apply to
these terms.
"J. C. BEATTY.
(Back): "Hold for my acct.   300.00 G. K."

The witness testified he had the money ready to pay the $5,500 specified, and was also able, ready and willing to pay the entire purchase price, if desired.

Defendant having failed to respond or indicate in any way that she would consummate the deal, it fell through and plaintiff commenced suit on September 9, 1920, to recover his commission of 3 per cent. for negotiating a sale for her as authorized, filing a bill of particulars claiming $600, to which defendant through her attorney pleaded the general issue. The case was tried before a jury in which the issues of fact submitted by the court were whether plaintiff had found a purchaser within the five days ready, willing and able to purchase the property in accordance with the terms of the listing of which notice was duly given, saying at the close of the charge:

"I have told you what the issue is. Did the defendant enter into this contract? She admits that. Did plaintiff fulfill his part to be performed? That is for you to determine whether he did. If he did, he is entitled to recover. If he did not, he is not."

Verdict with judgment thereon in the amount of $670 followed.

It is first contended in defendant's brief that the court erred in not directing a verdict in her behalf as requested on the ground that no sale having been actually made plaintiff could not recover unless his evidence showed that he had secured and presented to the owner an unconditional agreement in writing binding the proposed purchaser in the exact terms imposed by the written authority to sell, or presented to the owner the prospective purchaser who tendered the payment required and thereby expressed his willingness to contract on the terms specified. In support of this proposition counsel cite *Cain* v. *Masurette,* 196 Mich. 7. In that case a verdict was directed for the broker. The deal fell through owing to refusal of

the prospective purchaser to accept the property because of defect in the owner's title which was, or should have been, known to the broker, and over which there was an issue of fact as to whether the owner had advised the broker of the defect. The owner there made a "sale" (by the broker) an unqualified condition of paying a commission. Here the listing provides:

—"and in case you find a buyer ready and willing to consummate a deal on the foregoing terms   *   *   * I agree to pay you 3 per cent. of the sale price as a commission."

There was no question of a failure of title involved here. This is not of that class of cases where by the terms of the contract of agency the right of the broker to a commission is expressly made contingent upon a *sale* or some other special condition directly expressed or necessarily implied by the language of the agreement. It falls within the general rule that the broker's commissions are compensation for his services, and when the services stipulated for have been rendered he is entitled to his commission. The business of a real estate broker is in general to find a purchaser and, in the absence of express stipulation otherwise, the generally recognized rule is that he has earned his commission when he finds and produces a party who is ready, able and willing to take the property and enter into a valid contract therefor upon the terms made by the principal.

In the instant case a memorandum in writing embodying the terms of the sale was given by plaintiff to and accepted by the proposed purchaser who marked it "O K," followed by his initials, and made a deposit pursuant to it. It was signed by the agent of the vendor. The statute of frauds did not require it to be actually signed by the vendee who made a deposit

224—Mich.—35.

on and accepted it. *Smith* v. *Mathis,* 174 Mich. 271.
Asked as to his willingness and ability to pay, Kolowich
replied:

"Yes, we were even willing to pay in cash.    I had
the cash ready to pay the $5,500.    I had it on deposit,
cash ready to pay $20,000.    I was ready then to pay
the whole amount."

It is further urged that to earn his commission the
broker must have brought the proposed purchaser and
defendant together or have made known to her who
the purchaser was.    There is no question of double
agency or secret interest of the agent in the purchase
involved here.    Defendant was going to New York,
evidently expecting to return to Detroit before very
long, as they both recognized in their correspondence.
In her first belated and equivocal answer to his letter
notifying her that he had found a purchaser according
to the terms of his brokerage, offering his further
services in that connection as she might call upon
him, she replied that she expected to return to De-
troit as soon as she received word in regard to another
matter, and "will probably see you."    On leaving she
gave him her New York address with the five days'
written authority to *find* a buyer ready and willing
to *consummate* a deal on the terms she specified.    He
performed that service and notified her of the fact
within the time given.    He was attentive and in-
sistent in urging that she do her part in consummating
that deal and in offering his services to that end,
suggesting that, if she desired, her attorneys in De-
troit could look after her interests and attend to
consummating the deal for her in her absence.    She
gave no directions, or intimation that she would per-
form on her part, but apparently simply changed her
mind, would do nothing and so sought to end the
matter.

Defendant's counsel cite authority to the effect that

where there is no provision in a contract for the sale of real estate as to who shall furnish the abstract the rule of *caveat emptor* applies and the seller is under no obligation to furnish one, while here plaintiff had agreed to do so in violation of his agency, and called upon defendant to produce it.　His memorandum of agreement accepted by the purchaser contains no such requirement.　Whatever passed between them in that connection was oral.　In her authority to plaintiff to find a buyer she declared she would make a good and sufficient conveyance of the property, and her title was without incumbrance except a case in court compromised in her favor.　She had an abstract of it which she left in the Detroit abstract office and plaintiff's communication as to an abstract suggesting that it be rushed to save her interest met no objection by her.　Referring to where it was, with a "rush order," she stated that she expected to go to Detroit and would "probably" see him.　Under these circumstances the authorities cited are not controlling.　This case is controlled in principle by *Garrisi* v. *Kass*, 201 Mich. 643; *Webert* v. *Roberts*, 211 Mich. 692.　It was properly submitted to the jury and we find no prejudicial error in the rulings on testimony or charge of the court.

The judgment will stand affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.