### Lay v. E. D. Hinkle & Co.

Dec. 8, 1943.

Chas. S. Matherly for appellant.

C. E. Rankin for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON— Reversing.

H. D. Hinkle, a real estate broker doing business as E. D. Hinkle & Co. in Lexington, filed this action to recover of the appellant, Edward Lay, a 3% commission on the selling price of a farm, alleging that the farm was listed with him by Lay and that he procured a purchaser at the price of $24,000. At the conclusion of all the evidence a verdict was directed for Hinkle for the full amount sued for, $720. This appeal is from the judgment entered on that verdict, the appellant contending that a verdict should have been directed in his behalf or, in any event, that it should have been submitted to the jury under appropriate instructions.

We state the facts as revealed by the evidence, when conclusions of the witnesses and constructions placed by them on their actions are disregarded. In stating these facts we will not discuss the testimony of each witness in detail but will state only the ultimate facts we regard as clearly and conclusively established.

In the early part of 1941 Hinkle endeavored to effect the sale of a farm for Stanley Scott. In May 1941, thinking the sale was about to be consummated, Hinkle procured the appellant to list his farm for sale, with the idea of trying to sell it to Scott. He then induced Scott to look over the Lay farm as a prospective purchaser and Scott, after doing so, informed Hinkle that he might be interested. At this point the sale of Scott's farm apparently fell through and nothing was done by Scott or Hinkle with reference to the sale or purchase of Lay's farm. In July the sale of Scott's farm was effected and in August Scott again looked over the Lay farm with a view to purchasing, this being done on Scott's own initiative. Lay priced the farm to him but it was larger, and the price was more, than Scott was able to handle, and he so advised Lay. Scott was then informed by Lay that David Thoben might buy a portion of the farm and Lay agreed to see Thoben. The same afternoon Scott was notified by Lay that Thoben

would be at the farm to look it over. Scott went back to see if he and Thoben could agree on a joint purchase but they were unable to come to a definite agreement. Upon learning that Scott had looked over the farm Hinkle advised Lay that Scott was his prospect and Lay admits that he agreed to pay the commission if Hinkle sold the farm to Scott.

Some days later, in the early part of September, Scott enlisted the aid of Barnett & Sullivan in helping him to put over the deal. Barnett & Sullivan were not real estate brokers but were engaged in the seed business in Harrodsburg and also acted as agents of an insurance company in making loans. It clearly appears that they became involved in the transaction only for the purpose of getting a commission on a loan to be made by their insurance company to Scott, if he purchased. Barnett & Sullivan were informed by Lay that he was holding the farm for $24,000 and that this offer was open only for a few days. After negotiations between Scott, Thoben and Barnett & Sullivan an agreement was reached between Scott and Thoben by which the former was to purchase a certain number of acres at approximately $17,000 and the latter the remainder at approximately $7,000. A contract of sale between Scott and Thoben was then prepared by which Scott agreed to sell Thoben his agreed portion but the agreement was effective only in the event Scott could purchase the entire farm.

After the execution of this contract Barnett & Sullivan, in company with Scott, went to see Lay and an agreement was reached that Lay would sell to Barnett & Sullivan for $24,000. Lay knew, however, that Scott and Thoben were the eventual purchasers. The next day Lay, Scott, Thoben and Barnett & Sullivan met in Harrodsburg and a contract of sale was drawn between Lay and Barnett & Sullivan. A check for $2,400 for the down payment was given to Lay by Barnett & Sullivan but on the same day Scott gave his check to Barnett & Sullivan for $2,400 and a contract of sale was drawn between Barnett & Sullivan and Scott. Deeds were executed directly to Scott and Thoben by Lay for their respective portions, although the witnesses make it appear that this was done at the instance of Scott to save the expense of additional deed stamps and recording fees.

That the transaction was, in effect, a sale by Lay to Scott and Thoben is manifest. Barnett & Sullivan never intended to become actual purchasers and were interested only in earning a commission on a loan to be made to Scott, if he purchased—they were mere conduits through whom title was to pass to Scott and Thoben, a fact known to Lay, and even this pretense was abandoned when deeds were eventually executed. Scott and Thoben were the real purchasers. This being true, the sale of the larger portion of the farm was made to a purchaser furnished by the appellee and the appellant became liable to the appellee for the commission, since a real estate broker is entitled to a commission when he furnishes a purchaser who is accepted by his principal on satisfactory terms even though the transaction as concluded is different in terms from the one which the broker was authorized to negotiate. Consolidated Realty Co. v. Graves, 291 Ky. 456, 165 S. W. (2d) 26; Hammond v. George W. Gill Realty Co., 221 Ky. 521, 299 S. W. 165; McDowell v. Lewis, 200 Ky. 126, 254 S. W. 208.

But Scott, the purchaser furnished by the appellee, did not purchase the entire farm and did not procure the purchaser who purchased the balance. Neither Hinkle nor Scott was in any wise instrumental in procuring Thoben as a purchaser, the evidence being clear and uncontradicted that Lay himself did so. And, since this is true, the appellee was not entitled to commission on that portion of the farm sold to Thoben. It is true that where a prospective purchaser furnished by a broker in turn interests another who becomes the eventual purchaser the broker is entitled to his commission. Clarke v. People's Roller Mills Co., 206 Ky. 686, 268 S. W. 333. But no such situation existed here and, clearly, Hinkle, whose prospective purchaser purchased only a portion of the farm, is not entitled to commission on the entire farm since the purchaser furnished by him for a part of the farm did not interest the purchaser of the remainder, the latter purchaser being furnished by the owner.

The appellant, in his insistence that the trial court was in error in directing a verdict for any part of the commission, and that, on the contrary, a verdict should have been directed in his behalf, relies on a line of cases such as Koch Real Estate Co. v. Durrett, 214 Ky. 162, 282 S. W. 1079, and Watts v. Barber, 275 Ky. 411, 121

S. W. (2d) 59. These cases hold that when real estate has been listed with more than one broker, that broker is entitled to the commission who is successful in bringing the seller and purchaser together and inducing them to enter into the contract of sale, regardless of which one first introduced the seller and purchaser. An all sufficient answer to this contention is that no such situation confronts us. Barnett & Sullivan, who finally helped put over the sale, do not claim they had a contract with Lay for a commission. From the testimony of both it is clear, as pointed out above, that their only interest was to bring about the sale in order that they might secure a commission on a loan to be made to Scott when the sale was effected.

In view of the conclusions enunciated the trial court was correct in holding that appellant Lay sold to Scott and that the appellee was entitled to commission on that portion of the farm sold to Scott but was in error in directing a verdict for appellee for the commission on that portion of the farm sold to Thoben.

Judgment is reversed, with directions to grant the appellant a new trial and for further proceedings consistent herewith.