SORIVI v. BALDI.

No. 387.

Municipal Court of Appeals for the District of Columbia.

Argued June 17, 1946.

Decided July 25, 1946.

Arthur J. Hilland, of Washington, D. C. (George C. Gertman, of Washington, D. C., on the brief), for appellant.

James M. Earnest, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Mrs. Francesco Sorivi is the owner of The Nottingham Apartments. On October 17, 1945, she signed an agreement giving to Filippo Baldi, a licensed real estate broker, the exclusive sale of the property for four months at a price of $65,000, and also agreed to pay him the regular brokerage commission prescribed by the Washington Real Estate Board. About November 1, Baldi tendered a signed offer for the purchase of the property. This offer was rejected by Mrs. Sorivi, and on November 8 she revoked his authority to sell. Claiming that he had produced a purchaser ready, able and willing to purchase the apartment house upon terms and conditions authorized by Mrs. Sorivi, Baldi sued for his commission. The case was tried to a jury, which returned a verdict for the full commission for Baldi. Mrs. Sorivi prosecutes this appeal.

Two principal points are advanced by her in urging reversal: first, that appellee failed to bring his principal and the prospective purchaser into agreement on all material terms and conditions of the sale; and, second, that the commission was never earned because the contract produced by Baldi was signed in the name of a "straw party" instead of in the name of the real purchaser.

Baldi did not secure the prospective purchaser himself but took the matter up with a second broker, who in turn took it up with a third. This third broker interested Jerome Murray, a real estate dealer, in the proposition. Murray, on October 29, signed the usual form of real estate purchase contract in which the price of the property was fixed at $60,000. Murray, however, did not sign his own name to the offer but signed A. K. Steinman. At the trial Murray exhibited a notarized power of attorney signed by A. K. Steinman authorizing him to use that name in such transactions. There was testimony that it was generally known in real estate circles that Murray frequently bought property in the name of Steinman. A. K. Steinman is a housewife who has other real property in her name belonging to Murray but has

none of her own. He employs Mrs. Stein-man solely for the use of her name.

The $60,000 offer was presented to Baldi, who stated that Mrs. Sorivi would not sell for less than $65,000. There was then written on the side of the offer "The within contract will be approved if raised to $65,-000 within a reasonable time." This notation was o. k.'d by Baldi by writing his initials and by Murray by signing A. K. Steinman. The proposed contract bearing this notation was then presented by Baldi to Mrs. Sorivi. She testified she did not know A. K. Steinman was a straw party until the trial. Baldi, however, testified she asked who A. K. Steinman was and that he had informed her A. K. Steinman was a straw party, and that Jerome Murray was the real purchaser.

The offer presented to Mrs. Sorivi included detailed terms and conditions, some of which became the subject of the later controversy. It recited that a deposit of $1,000 had been received; that the purchaser agreed to pay all cash; that settlement of the transaction would be made within 60 days from the acceptance of the contract by the owner; that "seller agrees to give possession at time of settlement, and in the event he shall fail to do so he shall become and be thereafter a tenant by sufferance and hereby waives all notice to quit as provided by the laws of the District of Columbia"; that a commission of $2,950 would be paid, of which one-half was to be received by Baldi. On the reverse side of the proposed contract was a list of the 15 apartments, with a certificate that each rented for a specified monthly sum totaling $854. The certificate also provided that "the above rents are not in violation of the rules and regulations of the rent commission." In addition to the proposed sales contract, Mrs. Sorivi was asked to sign this certificate.

The accounts of the parties as to why Mrs. Sorivi refused to sign and revoked Baldi's authority to sell the apartment house differed materially. Baldi testified that after he had told her she could stay in her own apartment as long as she liked on a lease and that he would try to extend the time for settling the transaction as con-tained in the written offer she made an appointment with him for the purpose of signing the proposed contract, but then rejected the offer and revoked his authority. He testified she told him she had planned to use part of the proceeds of the sale in the purchase of a liquor business for her son but then discovered that such business would cost more than she had anticipated.

Mrs. Sorivi, on the contrary, gave other reasons why she rejected the contract: that she wanted the price of $65,000 written "all in one place" instead of on the side; that she wanted 120 days or a minimum of 90 days for closing, instead of 60 days, because she needed the extra time to find a place to live; that she had not planned that the sale would include the furniture in two apartments which she had furnished after buying the apartment house; that, as to apartment No. 4, the listed rental of $52.50 was incorrect and should have been $5 less; that her own apartment was listed at a rental of $65 a month, although, as the owner, she was not paying any rental; that she could not sign the certificate that the listed rents were not in violation of the rules and regulations of the rent commission because the rentals on the two furnished apartments had never been approved.

The case was presented to the jury by the trial judge with instructions that, unless they found from the evidence that the plaintiff procured a purchaser ready, able and willing to purchase the defendant's property at the price and on terms and conditions authorized by the defendant, their verdict must be for the defendant; that if the offer or proposed contract presented by plaintiff to defendant contained any material term or condition not authorized by defendant, she had a legal right to refuse to sign the proposed contract, and the jury's verdict must be for her; that if the defendant authorized the plaintiff to sell her apartment house without the furniture in the furnished apartments and that plaintiff procured a purchaser ready, able and willing to purchase the apartment with such furniture, the verdict must be for the defendant; that the relation between a real estate broker and the owner of land,

for whom the broker is acting, is of a confidential nature, requiring perfect good faith on the part of the broker, and entitling the owner to the benefit of his knowledge and advice.

We are met first with Mrs. Sorivi's contention that the broker failed to bring his principal and the prospective purchaser into agreement on all the material terms and conditions of the sale. This contention was urged as a basis for a motion for a directed verdict which was overruled by the trial court. It is now argued that this ruling was error and furthermore that the verdict of the jury is not supported by the evidence.

■ Viewing the evidence in the light most favorable to Baldi, as we must do, we have concluded that the evidence on this point was sufficient to support the verdict. The principal item of contention in this connection was the provision in the offer that settlement was to be made within 60 days from the date of the acceptance of the offer by Mrs. Sorivi. Such provision must be read in connection with the further clause that "seller agrees to give possession at time of settlement." While Mrs. Sorivi contended no agreement was reached on this point, we think that not only Baldi's testimony but also that of Mrs. Sorivi's son was sufficient to justify the jury in believing that Mrs. Sorivi finally agreed to accept the offer as written, on the understanding that after the transaction was closed Baldi would try to arrange for her to stay in her own apartment for a short additional time. Under the circumstances we believe this was not such a conditional acceptance as would prevent the jury from deciding that Baldi had brought about an agreement between the parties. The jury might properly have concluded that Baldi was not given an opportunity of carrying out his assurances because Mrs. Sorivi refused to sign the offer.

The next point raised by appellant is that a verdict for appellant should have been directed by the trial judge on the ground that since the proffered contract was signed in the name of the straw party Mrs. Sorivi, had she signed it, could not have enforced specific performance against anyone or recovered in a suit for damages for failure to perform the contract.

■ Some time after this case had been submitted, the jury returned to the courtroom and its foreman inquired whether it was necessary that the offer submitted be legally enforceable. The trial judge refused to instruct on this point, holding it was not material.

We believe that under the circumstances of this case the action of the trial judge was not erroneous. To entitle him to a commission where no sale is actually consummated, a broker employed to find a purchaser must either produce to the owner a customer who is able, ready and willing to buy on the terms prescribed by the owner, or else secure from the customer a binding offer of purchase on terms acceptable to the owner, unless, of course, these requirements are waived by the principal's refusing to proceed after notice by the broker that he has such an offer or purchaser.[1] To "produce a purchaser" does not necessarily mean that the seller and buyer must be brought face to face; only that the seller be afforded an opportunity to make a binding contract.[2] While some agreements between landowners and brokers may require the broker to actually complete the sale, the listing in this case only authorized the broker to find a buyer. Such listings do not require or permit the broker to make a binding contract of sale.[3]

[1] 12 C.J.S., Brokers, § 89. See also Crowe v. Trickey, 204 U.S. 237, 27 S.Ct. 275, 51 L.Ed. 454; Pratt v. Realty Associates, Inc., D.C.Mun.App., 45 A.2d 478; Espalla v. Lyon Co., 226 Ala. 235, 146 So. 398; Overton v. Harrison, 207 Ala. 590, 93 So. 564; Morgan v. Whatley & Whatley, 205 Ala. 170, 87 So. 846; Bailey v. Padgett, 195 Ala. 203, 70 So. 637; McDowell v. Lewis, 200 Ky. 126, 254 S. W. 208; Ostroff v. Doctor, 238 N.Y. 264, 144 N.E. 577; Equitable Life Assur. Soc. of United States v. Home, 184 Okl. 542, 88 P.2d 887; Moss. v. Warns, 245 Wis. 587, 15 N.W.2d 786, 156 A.L.R. 598.

[2] McDonald v. Smith, 99 Minn. 42, 108 N.W. 291.

[3] Dotson v. Milliken, 27 App.D.C. 500, affirmed 209 U.S. 237, 28 S.Ct. 489, 52 L. Ed. 768; see also Beatty v. Goodrich, 224 Mich. 538, 194 N.W. 985.

In any event, we believe that had Mrs. Sorivi accepted the offer as submitted, knowing that Jerome Murray was the real purchaser, it would have been enforceable against him. In opposition to this view, Mrs. Sorivi relies upon Houtz v. Hellman, 228 Mo. 655, 128 S.W. 1001. In that case the real purchaser signed a real estate purchase contract in the name of his straw man, Houtz, and then Houtz brought suit for specific performance of the contract against the landowner. The testimony showed that the name of the real buyer was kept secret from the landowner and there was no testimony that there was any authority to use the name of the straw man. The court severely criticized such practices and refused specific performance. Contrary results have been arrived at, however, where it was sought to enforce such contracts against persons who have contracted in the names of straw parties. It is well settled that a person or corporation may assume or be known by different names, and contract accordingly, and that contracts so entered into will be valid and binding if unaffected by fraud.[4] By its verdict in this case, the jury, having been instructed that a broker must show perfect good faith and that the owner is entitled to the benefit of the broker's knowledge, found that this transaction was free of fraud and that a full disclosure was made to Mrs. Sorivi.

This leaves for consideration the question whether Baldi produced a customer ready, able and willing to buy. By its verdict the jury answered the question affirmatively. Our inquiry, therefore, is whether the evidence supports the verdict. We believe it does.

Were it not for the evidence that Mrs. Sorivi was told that Mrs. Steinman was a straw party and that Murray was the real purchaser, we do not believe that the verdict of the jury could be sustained. In that event the evidence would be clear that the only purchaser produced by Baldi to Mrs. Sorivi was A. K. Steinman, and she did not fulfill the conditions of a ready, willing and able purchaser. The production of a mere straw party as the buyer does not entitle the broker to his commission.[5] The seller is entitled to rely on her agent to inform her if the purchaser produced is a person without the means of completing the sale, and that the real purchaser is someone else altogether.

Here, however, while the offer produced by Baldi purported to be signed A. K. Steinman, Baldi testified, and the jury was entitled to believe, that the real purchaser was Jerome Murray, that Baldi informed Mrs. Sorivi of this fact and that she made no objection to this arrangement. Although there was testimony about Murray buying the property for his wife, of her willingness and ability to pay cash for it, and although there was further testimony to the effect that Mrs. Steinman had a large amount of other property belonging to Murray in her name, Murray himself testified that he was financially able to pay all cash for the property in accordance with the offer, and there was no conflicting testimony on this point. Thus, there was testimony from which the jury could have believed that Murray, as the proposed purchaser, was ready, willing and able to buy on the terms proposed and that Mrs. Sorivi agreed to accept him as the buyer and then rejected the offer because she had decided not to sell in any event. The jury having accepted such evidence, we would not be justified in upsetting its verdict.

Affirmed.

---

[4] Frank A. Gilbert Realty Co. v. Timmerman, Mo.Sup.1944, 183 S.W.2d 131; Gotthelf v. Shapiro, 136 App.Div. 1, 120 N.Y.S. 210; Boyle Holding Corp. v. Medgreen Holding Corp., 154 Misc. 189, 276 N.Y.S. 670.

[5] Mechem on Agency, 2d Ed., Vol. 2, § 2441; McCabe v. Jones, 141 Wis. 540, 124 N.W. 486.